Bernard S. Meyer, J.
The Planning Board of the Town of Islip having denied petitioners’ application for approval of their subdivision map, petitioners seek review of its decision through this article 78 proceeding. (Civ. Prac. Act, art. 78.) Specifically, it is contended that the board acted illegally and beyond the scope of its jurisdiction in refusing approval because petitioners had not (1) shown easements for installation of utilities over Oak Neck Road, the private road running from Montauk Highway to the property to be subdivided, (2) indicated willingness to improve the road for the full distance from Montauk Highway to the property, (3) indicated their readiness to form a special sewer district for the area. The other objections set forth in the Planning Board’s decision and in its answer, petitioners appear ready to comply with, and after argument, the town has conceded on the authority of Ferguson v. Producers Gas Co. (286 App. Div. 521) that petitioners’ right of way over Oak Neck Road includes the right to install public utilities. There remains for determination the authority of the board to require improvement of roadway not on petitioners’ plat and to require formation of a special sewer district.
Authority to approve subdivision plats is vested in the Town Board by sections 276 and 277 of the Town Law. Pursuant to the provisions of those sections, the Town Board by resolutions of March 9,1932 and May 11,1956 has delegated to the Planning Board approval of subdivision plats, and the Planning Board has, with the approval of the Town Board, adopted, and from time to time revised, subdivision regulations. The resolutions and regulations referred to contain no restriction or limitation; the delegation to the Planning Board is of the full statutory authority.
If statutory authority exists for the Planning Board’s requirement that Oak Neck Road be improved by petitioners for its full length from Montauk Highway to petitioners ’ development, the court entertains no doubt, in view of the decision of the Court of Appeals in Matter of Brous v. Smith (304 N. Y. 164) that such statute is constitutional. There is, however, no statutory provision empowering a town to require such improvement at the time a subdivision plat is approved. As above noted, authority for approval of such a plat is contained in sections
*892 276 and 277 of the Town Law. The only relevant provision of those sections is that contained in the third sentence of subdivision 1 of section 277 which, in pertinent part, reads as follows: “In approving such plats the planning board
shall require * * * that all streets or other public places shown on such plats shall be suitably graded and paved”. (Emphasis supplied.) That language refers only to streets within the proposed subdivision, notwithstanding that in practice such plats also include a key map locating the subdivision area with respect to surrounding highways and that on the key map shown on the plat here in question Oak Neck Boad from Montauk Highway to the proposed development is actually shown.
The only statutory authorization for requiring improvement of streets outside the proposed subdivision is that contained in section 280-a of the Town Law, the statute considered in Matter of Brous {supra). While by Town Board resolution dated March 26,1957, the Planning Board has been appropriately empowered under section 280-a, that section simply provides in subdivision 1, that a building permit may not be issued: “ unless a street or highway giving access to such proposed structure has been duly placed on the official map or plan, or if there be no official map or plan, unless such street or highway is (a) an existing state, county or town highway, or (b) a street shown upon a plat approved by the planning board as provided in sections two hundred seventy-six and two hundred seventy-seven of this article, as in effect at the time such plan was approved ’ ’, and in subdivision 2, that “ Before such permit shall be issued such street or highway shall have been suitably improved to the satisfaction of the town board or planning board ’ ’. The town argues that sections 276, 277, 278 and 280-a must be read together to authorize the requirement that access streets be improved at the time of subdivision and that the failure to impose such a requirement either works hardship on purchasers of individual lots who are not made aware of their obligation to make such improvement, or puts the town in the position that it must grant variances to such individual lot owners, as it is authorized by subdivision 3 of section 280-a to do. The obvious answer is that section 280-a is specifically limited in effect to the issuance of building permits, and that there would be no necessity for such a requirement with respect to “a street shown upon a plat approved by the planning board”, as provided in subdivision 1, if the Planning Board could require improvement of such streets at the time of subdivision. While the practical argument advanced by the town has much merit *893 (see note, 40 Cornell L. Q. 258, 267) and the Brous decision recognizes (304 N. Y., supra, pp. 169-170) that “modern planning legislation ’ ’ may require improvement at the time of subdivision, there is no such present requirement and it is the Legislature, not the Town Board, not the Planning’ Board, and not this court, that has the power to impose such a requirement. (See Lunmor Homes v. Johnson, 122 N. Y. S. 2d 149; Matter of Villa-Lateen Corp. v. Planning Bd., 138 N. Y. S. 2d 362.)
The situation is different, however, with respect to the Town Board’s requirement that applicants indicate their readiness to form a special sewer district for the area. Subdivision 1 of section 277 provides that ‘ ‘ In approving such plats the planning board shall require that . . . sanitary sewers and storm drains or combined sewers shall be installed all in accordance with standards, specifications and procedure acceptable to the appropriate town departments except as hereinafter provided”. Petitioners contend that under title II of article II of the Public Health Law, responsibility for approval of sewerage systems in subdivisions rests with the State Department of Health and that respondent board was obligated to approve the subdivision plat subject to its approval by the State Department of Plealth. That argument, however, overlooks section 1118 of that title which renders the rest of the title inapplicable to ‘ ‘ any county which has established or establishes a county or part-county department of health that has adopted or adopts regulations for the control of such developments.” Suffolk County has a County Board of Health. Under sections 341 and 347 of the Public Health Law that board exercises all the powers and performs all the duties of the Town Board of Health. It is, therefore, by the “ standards, specifications and procedure acceptable ’ ’ to the Suffolk County Board of Health that the Planning Board must be guided under subdivision 1 of section 277 of the Town Law, subject only to the Planning Board’s authority under subdivision 3 of section 277 to waive such requirements.
By resolution dated June 15, 1960, the Suffolk County Board of Health has established the policy 11 that realty subdivisions, proposing the use of private individual sewage systems in areas where mass development of such systems would indicate early failure or malfunction of such systems, should not be approved. The only acceptable method for areas where the nature of the soil and methods of land development are not conducive to individual sewage disposal systems is the use of communal sewage collection and treatment systems.” The Planning *894 Board’s requirement of the formation of a special sewer district is authorized by section 277 of the Town Law therefore, unless on the facts it can be said that its determination is unreasonable with respect to the property involved in this subdivision, or its application of the Board of Health policy to the facts of the instant case erroneous, or that the board should have exercised its power of waiver.
That a requirement for formation of a sewer district and refusal to accept individual sewage disposal facilities is not unreasonable or arbitrary, see Matter of Gulino Constr. Corp. v. Hilleboe (8 Misc 2d 853). Likewise denial of a permit until there were 1 ‘ proper drainage and sanitary facilities ’ ’ was confirmed in Matter of Green Acres Bldg. Corp. v. Board of Zoning Appeals of Town of Irondequoit (22 Misc 2d 877), the court refusing to substitute its judgment for that of the board. The return made by respondents consists of minutes of the public hearing held May 27, 1960 and an extract from the minutes of the board’s meeting of June 21,1960, setting forth the resolution denying approval; no verbatim transcript of the hearing was made. The hearing minutes show that there are 47 plots in the two sections of the subdivision as laid out, that the developers propose a system of gravity flow to septic tanks followed by distribution to a tile field, which the developers claim will result in any liquids reaching ground waters in an acceptable state of purity, that the closest portion of any tile field from the canals shown on the maps would be 120 feet, that a treatment and disposal plant of the type suggested by the County Health Department would require a capital expenditure, exclusive of land, of $110,000 (erroneously stated in the minutes as $110) and would require checking every other day to maintain it. Also part of the record is a letter dated April 21, 1960, from petitioners’ attorney to the administrative officer of the board indicating that esthetic considerations make such a plant unacceptable since purchasers could not be found for plots close to the plant and further “ that there will be no more than forty buildings erected.” If it be accepted that there will be a cost of $110,000 to be recovered from the sale of 40 houses, the added cost per home to the developer would be $2,750. It cannot be said that such an additional cost per plot is of itself unreasonable, for the Appellate Division, Second Department, in Matter of Se-Franh Developers v. Gibson (5 A D 2d 687) upheld disapproval of a subdivision plat for failure to provide for water mains and a stabilized road surface, notwithstanding the developers’ arguments that there would be an added cost per plot of $3,000 which would produce a loss of $1,500 to $2,000 per *895 residence if sold at the advertised price. Nothing in the present record shows the prices at which petitioners propose to sell houses or substantiates that an added cost of $2,750 per plot would result in the proposed homes being too expensive to be marketable, petitioners having contented themselves with showing that the system they proposed was adequate for the purpose for which it would be used. It is not the function of this court, however, to weigh the relative merits of the two systems; it can set aside respondents’ determination only if it finds that the solution chosen by respondents is so unreasonable as to make its determination arbitrary. On the present record that cannot be said with respect to the requirement of the formation of a sewer district.
The matter must nonetheless be remitted to the board for a further hearing and for the making of proper findings of fact, for the record does not show either that the County Health Department or the Planning Board made a specific determination that the general policy set forth in the Health Department resolution of June 15, 1960, is applicable to the particular land here in question. One of the particular items which the Planning Board is to consider under section 277 of the Town Law is ‘ ‘ that the land shown on such plats shall be of such a character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace ”. The Health Department has not stated, so far as this record shows, what type soil is ‘‘ not conducive to individual sewage disposal. ’ ’ While the maps show that the property in question fronts on Great South Bay, and that fact might be argued in support of a finding by the board concerning the nature of the soil, no finding was made on that question. Town Counsel now argues that it is common knowledge that cesspools near a high-water table do not function satisfactorily over a period of years, but the large number of cesspools that have been used for years in areas along Long Island’s south shore casts sufficient doubt on the validity of that generality to proscribe the court’s judicially noticing that the particular land involved in this proceeding is of such character that there would be danger to health from installation of cesspools. After further hearing the board should make specific findings in this respect, indicating what facts, if any, are based on personal knowledge of the board’s members.
Since the matter is to be remitted, the court should direct attention to subdivision 3 of section 277 of the Town Law and article IX, section 9, of the town’s subdivision regulations pursuant to which respondent board is empowered to waive *896 requirements. It does not appear that the board considered anything more than the applicability of the Health Department resolution. On remand, it should consider whether on the facts presented by petitioners the requirement for communal sewage collection should be waived because of inadequacy or lack of connecting facilities or for other authorized reason.