Jack Stanislaw, J.
This declaratory judgment action was submitted to the court on stipulated facts together with plead *464 ings, exhibits and the memoranda of the parties. Plaintiff Cypress Estates, Inc., attacks certain procedures of the defendants Suffolk County Board of Health and Department of Health as unlawful generally as well as it has itself been specifically affected by them.
On January 18, 1963 Cypress obtained informal Department of Health approval for the installation of individual (cesspool) sewerage systems for a proposed subdivision development. Then, on July 24,1963, plaintiff was advised that the department would approve subdivision plans for up to 600 homes only if a preliminary plan had been submitted to a town or village planning board by September 1, 1963. Cypress met this condition and forwarded its then proper applications to the Department of Health in order to obtain approval of the cesspool system shown on its subdivision maps. Although these plans were fully approved at first they were subsequently conditioned as to approval for a period of one year. After the maps were duly filed in the County Clerk’s office, the Board of Health promulgated a resolution that no subdivision of 100 homes or more would be approved at all unless it provided for the installation of a communal sewage and treatment system. Finally, Cypress was told, in October of 1965, that its actual development, utilizing cesspools, could not be permitted because of the resolution noted and the expiration of its conditional approval without a renewal thereof.
Cypress claims, to begin with, that the Board of Health is powerless to condition its approval of subdivision maps and must either approve or disapprove in toto. The Public Health Law prohibits the sale of part or all of a subdivision unless a map or plan of it has been filed with and approved by the local Board of Health prior to its filing with the County Clerk (§ 1116). And the County Clerk may not file the map unless the approval and consent of the Health Department vis-a-vis the sewerage system is shown (§ 1117). Plans which are not or cannot be approved are to be returned to the person submitting them together with a summary of reasons for disapproval (§ 1119). This last procedure points up the fact that approved plans are to be retained and filed by the Health Department (Public Health Law, §§ 1116, 1119).
Undoubtedly, the defendant has the power to resolve as pertains to sewage disposal. However, it is plaintiff’s particular contention that once its map was approved it was beyond the scope of any subsequent action that might be taken by the defendants. The board may, we believe, require more of a later plan than it did of an earlier one (Matter of Gulino Constr. *465 Corp. v. Ililleboe, 8 Misc 2d 853). Or, in a particular case, communal rather than individual sewage disposal facilities (Matter of Medine v. Burns, 29 Misc 2d 890). But the essential, related inquiries here are a little different: whether the board had the statutory ability to do other than simply approve or disapprove plans, and, in any event, could it validly approve one method of sewage disposal and then ask for another as to the same plans. After initial approval of plaintiff’s map the defendant attached a one-year time limitation to its approval, relying on its subsequently passed resolution to justify its authority to deny an extension as well as to limit approval in the first instance.
The defendant’s powers are limited by the statute responsible for its existence. However, a board of health has not only those powers specified in the Public Health Law, but the further capacity to adopt regulations generally consistent with those powers (Public Health Law, § 347). Defendant’s latitude along these lines is, interestingly enough, not pointedly and precisely circumscribed (cf. Matter of Walton v. Town of Brookhaven, 41 Misc 2d 798). Regulations are broadly permitted “for the security of life and health * * * which shall not be inconsistent with the provisions of [the Public Health Law] and the sanitary code”. (Public Health Law, § 347.) Not too long ago we had occasion to familiarize ourselves with the defendant’s legitimate area of concern regarding water purity and pollution (Leone v. Paris, 43 Misc 2d 442, mod. 24 A D 2d 508). The propriety of its similar concern in this area is again apparent. More specifically, we find it difficult to appreciate the use of limited (conditioned) subdivision approvals as designed other than to further the express State policy of maintaining a reasonably pure water supply (Leone v. Paris, supra; Wilner v. Department of Health, 5 Misc 2d 331).
Cypress claims that the resolution is arbitrary even if otherwise permissible in that it capriciously requires communal sewage facilities for subdivisions of 100 or more homes, drawing a line without relation to genuine considerations of public health, safety and welfare. Yet a brand new amendment of section 277 of the Town Law, providing for a Suffolk County sewer agency, differentiates the servicing status of groups of less than 100 homes (L. 1966, ch. 383, eff. June 1, 1966). Defendant’s 100-home cutoff is not only presumptively reasonable per se, it is buttressed by the Legislature’s equally presumptively reasonable legislation in the same area of over-all concern. The board has not only acted within a delegated area of responsibility, it has acted in a manner not shown to be other than reasonable, *466 proper and constitutional as must be initially presumed (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537).
Notwithstanding what we consider to have been the totality of unobjectionable actions of the defendants, the cumulative application of its well-intentioned maneuvers to Cypress in particular is intolerable. We do not agree that renewals of conditional approvals, or outright approvals, extended others in the face of plaintiff’s limited and unrenewed approval, surely establish discrimination as to plaintiff. The variety of justifiable bases for such other actions is infinite and perhaps necessary in as fast moving and fundamentally desirable an area as this. But to the extent that some of those extensions of time are grounded upon a degree of completion of nonconforming facilities there is evidently an informal reliance on the artificial semblance of the vesting of a right to renewal. In this sense Cypress has an understandable and actionable cause for dismay.
Vested rights, those which have become impervious to administrative fickleness, are not easily classified or defined. In support of its claim of the accrual of such rights Cypress lists the following: (1) the preconveyance letter from defendant to it indicating the amenability of conditions on the property to adequate individual sewerage systems; (2) payment for the property, engineering and related development, in all exceeding $550,000; (3) defendant’s postconveyance assurance that its proposed maps were in proper form for approval of individual sewage systems; (4) initial unconditional approval of maps, followed by (5) the later limitation of approval to one year; (6) the filing of the approved maps with the County Clerk; (7) conveyance of more than 200 acres for various public uses; (8) water authority contracts; (9) construction of model homes.
At least as to zoning Cypress had something of a vested right when it filed its maps with the County Clerk (Town Law, § 265-a: 3 Rathkopf, Zoning and Planning, ch. 71, pp. 71-19, 71-20), further enhanced by its conveyance of a part of the subdivided property for public uses (see Ward v. City of New Rochelle, 8 N Y 2d 895). To this we must add its other reasonable activities carried on in like furtherance of a fully developed subdivision (Telimar Homes v. Miller, 14 A D 2d 586; Matter of Humble Oil & Refining Co., 49 Misc 2d 432). While rights generally are discussed as vesting only in relation to zoning ordinances the principle involved is a constant one. That is, that an extensive, legally instituted and continued course of action carries with it an increasing degree of immunization from governmental erraticism. Therefore, though we acknowledge *467 and even emphasize the great public benefit associated with the defendants’ actions we must perhaps even more pointedly reiterate the singular rights of this plaintiff.
Judgment is granted declaring plaintiff’s right to installation by it of individual sewage disposal facilities as first submitted and approved, and the disability on the part of the defendants to instead require a communal system. Defendant’s regulations are otherwise found to be valid and constitutional.