Cabl W. Petebson, J.
The petitioner Gulino Construction Corporation brings this proceeding under article 78 of the Civil Practice Act for an order directing Dr. Herman E. Hilleboe, Commissioner of the Department of Health of the State of New York, to file and approve a map of section 2 of Oak Ledge Manor in the town of Camillus, State of New York.
It appears that the petitioner acquired certain real property consisting of about 83 acres of land situate in the town of Camillus in May, 1955 and that this property was purchased for the sole purpose of subdividing the same into tracts and erecting homes thereon.
After acquiring the property the petitioner created a tract known as section 1 of Oak Ledge Manor consisting of approximately 36 lots upon which a number of houses have been built and equipped with individual sewage disposal facilities.
Subsequently a map of section 2 was prepared by licensed land surveyors with the approval of the supervisor of the Town of Camillus, and a copy of the map was submitted to the New York State Health Department for approval. The New York State Department of Health has refused to approve same, pending (1) formation of the Nine Mile Creek Sanitary District and (2) formation of a town collecting sewer district to serve Oak Ledge Manor.
Petitioner has filed with the Town Board of the Town of Camillus a petition for the establishment of the Oak Ledge Sewer District for the premises described in section 2, but the establishment of such a sewer district has as yet not materialized.
It further appears that the Onondaga Public Works Commission of Onondaga County has requested consulting engineers to make a study and report as to the Nine Mile Creek Sanitary District. Petitioner further states in its petition:
“ 10. All of the homes erected in Section 1 of Oak Ledge Manor are equipped with individual sewage disposal facilities which are functioning properly, and. in addition thereto, a sewer pipe has been constructed with each home extending 35 feet to the street line so that the use of the individual sewage disposal can be easily discontinued whenever public sewer facilities are available and the individual sewer connections to public sewage system are ready for attachment. Your petitioner was informed that at that time it was only *855 necessary for the builder to construct such a house sewer to a point beyond 5 feet of the cellar wall or foundation to be available for future use.
‘111. As appears in the proposed map of Section 2 of Oak Ledge Manor the same house sewer will be constructed for each house thereon extending the distance of 35 feet from the cellar wall or foundation to the street line.
“ 12. Tour petitioner is willing to construct any of the required sewage facilities within the proposed section 2 of the Oak Ledge Manor.”
The respondent admits that the homes erected in section 1 are equipped with individual sewage disposal facilities, the plan being earlier approved by the State Health Department, but contends that similar sewage facilities for section 2 are inadequate and unsatisfactory in view of all conditions.
As a defense to this proceeding with respect to section 2, however, respondent states that it has issued a Statement of Policy for Realty Subdivisions in Onondaga County to the builders participating in such projects, a copy of which is before the court. It contends that building in the town of Camillus has developed more rapidly during the past five years than in any of the towns in the metropolitan Syracuse area, that the population of the town of Camillus has doubled in the last years and that the approval of s'eptic tanks without adequate planning and construction of public sewers will impose a hardship on the purchasers of these homes and lead to unsanitary conditions; that the area in question extends to about 100 lots and that septic tanks and leaching units are temporary at best; that the map submitted by the petitioners shows septic tank installations and house service sewers but does not designate any public sewer system to serve the area; that the leaching units connected to each septic tank can be very dangerous to health of children because of the danger of overflowing; and that there is no concrete evidence of any formation of the Nine Mile Creek Sanitary District nor any actual indication of the town creating a sewer district to serve Oak Ledge Manor.
Section 1116 of the Public Health Law provides as follows:
1 ‘ Realty subdivisions; plans required to be filed and approved.
“ 1. No subdivision or portion thereof shall be sold, offered for sale, leased or rented by any corporation, company or person, and no permanent building shall be erected thereon, until a plan of such subdivision shall be filed with and approved by the department.
*856 1 ‘ 2. Such plan shall show methods for obtaining and furnishing adequate and satisfactory water supply and sewerage facilities to said subdivision.
“ 3. The installation of such facilities shall be in accordance with the plans or any revision or revisions thereof approved by the department.”
It is obvious that these proposed houses cannot be erected until the map or plan, of the subdivision shall be approved by the department and until the plans show adequate and satisfactory sewerage facilities, and that this installation must be in accordance with the plans approved by the Department of Health.
The question then is whether the plan submitted by petitioner shows methods for obtaining and furnishing adequate and satisfactory sewerage facilities. The State Department of Health claims that it does not.
It seems apparent under section 1116 of the Public Health Law that it is for the State Department of Health to determine whether or not the submitted plans show adequate and satisfactory sewerage facilities, and its judgment thereon should not be disturbed, excepting where its action is arbitrary, tyrannical or unreasonable. (People ex rel. Agins & Klugerman, Inc., v. Board of Health of City of N. Y., 197 App. Div. 562, 564; People ex rel. Lodes v. Department of Health of City of N. I., 189 N. Y. 187.)
Petitioner claims that the proposed homes or buildings will comply with all sanitary regulations and that the department may not in its discretion refuse approval. The respondent contends that the petition herein on its face fails to state facts sufficient to grant the relief asked for.
It must be conceded that the Department of Health of the State of New York' is charged with duties of the highest importance, to wit: to protect the public health. In its capacity of protection of the public health, it has enunciated a policy (Statement of Policy for Realty Subdivisions in Onondaga County, dated June 15, 1955) relative to realty subdivisions in Onondaga County, which in part reads:
“ 1. Each subdivision or section of a subdivision will be considered upon its merits as a separate and independent problem. The policies of the Department will apply to all subdivisions in a general way but may be modified as required to provide the most satisfactory and economical arrangements possible for sanitary facilities in any particular local situation or under any special conditions. The final decision will depend *857 upon soil conditions, the size of the subdivision, the rapidity with which it may be developed and other conditions.
“ 2. The development of land accessible to public sewers is to be encouraged. Vacant land near county trunk sewers or in the vicinity of a municipal sewer system should be developed wherever possible in preference to locations remote from such facilities. Large subdivisions which are proposed for development in such remote locations may be faced with the problem of the installation of public sewerage facilities. In order to protect the public health it may be necessary to impose restrictions on the size of subdivisions in areas remote from such facilities unless public sewers are provided.
“3. In order that building construction may proceed in an orderly and normal fashion, it is important that the several towns and villages be urged to act concurrently with the Onondaga County Public Works Commission in order to reach an effective solution to the sewerage problem. The necessary steps to establish lateral sewer districts and to construct public sewer systems in the towns should keep pace with the design and construction of the county trunk sewers.
# * #
“ 8. Where the proposed subdivision is in a location reasonably accessible to a county trunk sewer or a sewer of a municipal system, arrangements shall be made by the builder to install public sewers and participate in the establishment of a sewer district through agreement with the proper local officials. In determining the accessibility of such sewers, the size of the subdivision and the relative nearness of the sewers will be taken into consideration.
‘ ‘ 9. Where public sewers are under construction in the proposed subdivision, or are under contract for construction, and such construction will not be completed and in operation before houses are ready for occupancy, the builder shall install, in addition to the necessary temporary individual sewage disposal system, located either in front or rear of the house, a house sewer, available for future use, from the house to the street line or such other point near the street as may be designated by the local officials. In such instances due consideration will be given to an appropriate reduction in the usual requirements of the Department for individual sewage disposal systems. The depth of the termination point below the street line shall be indicated on the subdivision plans after clearance with the engineer for the town, village or county public works commission. Satisfactory evidence of such clearance shall be indi- *858 coted upon the plans or be furnished to the Department in some other acceptable manner.
“10. Where subdivisions are proposed in areas not within any county sanitary district nor within any sewer district but where public sewers are being planned and appear to be scheduled for construction in the near future the builder may be required to install in addition to the necessary temporary individual sewage disposal system, a house sewer, available for future use from the house to the street line or such other point near the street as may be designated by the local officials. Where such facilities are not planned nor anticipated and the installation of individual sewage disposal systems are found to be warranted, such systems shall be at a location agreed upon by the district sanitary engineer and the local engineer after due consideration of the possibilities of future sewer construction in the area.”
It is significant that the final decision will depend upon soil conditions, the size of the subdivision, the rapidity with which it may be developed and other conditions.
While the department has given approval to the development of section 1 by petitioner, it is obvious under its statement of policy that its position with respect to the approval of section 2 will depend upon the progress made by the Town of Camillus in its study of the public sewerage for the area and the establishment of a sewer district.
The department is apparently not now satisfied with the progress toward such end.
The court is of the opinion that the petition herein does not state facts sufficient to warrant the relief prayed for. It does not appear from the petition presented or from the plan submitted by petitioner that the proposed homes will be offered adequate and satisfactory sewage facilities as contemplated by the policy of the Health Department. More particularly, this map submitted, while it shows septic tank installations and house sewer service, does not designate any public sewer system to serve the area. It does not appear from the petition that public sewers are under construction; nor does it appear that such facilities are actually being planned or the installation of individual sewage systems agreed upon by the district sanitary engineers and local engineers after due consideration of the possibilities of future sewer construction in the area. The requirement of the State Board of Health as to the formation of a sanitary district or sewer district does not to this court seem unreasonable or arbitrary in view of its responsibility to protect the health of the community.
*859 The petition is accordingly denied, without prejudice, however, to renewing this application at such time as it may appear that a satisfactory plan for adequate and satisfactory sewage facilities has been effected.
Order may be entered accordingly.