Joseph Life, J.
This is a proceeding* under article 78 of the Civil Practice Act for an order in the nature of mandamus compelling the respondents to issue a building permit.
The individual petitioners are the owners of three separately held plots of land situated in North Bellmore, Nassau County, New York. Each plot is shown on the Land and Tax Map of Nassau County, and has been held in single and separate ownership since April 18, 1962. The corporate petitioner is the contract vendee of the three lots. The land owned by the individual petitioners are so-called “pot-handle” plots which have an approximate frontage on Little Neck Road of a little more than 15 feet. The principal area of each plot is connected to the road by a strip of land forming the right of way (the so-called “ pot-handle ”).
The respondent Baldwin, who is the Chief Building Inspector of the Town of Hempstead, originally denied the petitioners a permit on the ground that their application violated section B-10.1 of Article 5 of the Building Zone Ordinance of the town. The latter section requires that building plots have designated minimum width at front street lines and front setback lines. The ordinance also excepts from its provisions lots having an area of 4,000 square feet which were under different ownership from adjacent land on October 25, 1957, *694 and provided they did not come into common ownership since that date.
The petitioners then filed an application to the Board of Zoning Appeals of the Town of Hempstead for a variance or waiver of the minimum front line width provisions of the ordinance. The application was predicated on the theory that the petitioners did not come within the ordinance because they acquired title to their premises prior to its amendment. The application was granted based on a finding that the petitioners’ property was not affected by section B-10.1, as amended, and were legally entitled to a variance on the ground of practical difficulties and a showing of single and separate ownership prior to the date the ordinance was amended.
The petitioners thereafter renewed their request for a building permit, and respondents again denied their application on the ground they had failed to file a subdivision map as required by section 334-a of the Beal Property Law. The sole question before this court is whether compliance with section 334-a is a condition precedent to the issuance of a permit.
Subdivision 1 of section 334-a provides: ‘ ‘ It shall be the duty of every person * * * who, as owner or agent of real property situated in the county of Nassau, subdivides the same into lots, plots, blocks or sites with or without streets, for the purpose of offering such lots, plots, blocks or sites for sale to the public * * * to file * # * in the office of the clerk of Nassau county a map or maps of such real property.” The failure to file such map subjects the owner to a penalty of $25 for each lot shown thereon (§ 334-a, subd. 13). Belated provisions dealing with the filing of subdivision maps are found in the Town Law (§ 276 et seq.) • Public Health Law (§§ 1115-1118) and the County Government Law of Nassau County (art. XVI). A reading of these statutory provisions leads to the conclusion that the filing of a subdivision map is not required where the subdivision comprises less than five lots fronting on a public street.
Section 280-a of the Town Law provides: “No permit for the erection of any building shall be issued unless a street or highway giving access to such proposed structure has been duly placed on the official map or plan, or if there be no official map or plan, unless such street or highway is (a) an existing state, county or town highway, or (b) a street shown upon a plat approved by the planning board ’ ’. This section makes clear that the filing and approval of a subdivision map is required only where the lot either does not front on a public street, or on a street shown or designated on an official map. That section *695 has no application here for petitioners’ lots front on Little Neck Road which is a town highway, and is indicated as such on the Land and Tax Map of Nassau County.
Section 1115 of the Public Health Law, on the other hand, does require the filing of a map where a tract of land is subdivided into five or more parcels whether or not it be along an existing or proposed street. This provision, however, would be superfluous if the filing of a map were nonetheless required for lots fronting on public highways under section 334-a of the Real Property Law. A construction of these statutes indicates that building permits may issue for lots on a public street. The only restriction is that a tract or lot so located shall not be divided into five or more parcels unless a subdivision map is filed (Public Health Law, § 1115). There is nothing in the language of section 334-a of the Real Property Law which provides otherwise.
The filing of subdivision maps is generally required to provide for the orderly development and planning of a community (cf. Matter of Brous v. Smith, 304 N. Y. 164) and that purpose is not defeated by building on a lot fronting on a street, laid out and improved by a municipality. The purpose of a statute, such as section 334-a, however, is merely to make a public record of the map for the sake of definiteness and certainty (Matter of the City of N. Y. [E. 177th St.], 239 N. Y. 119, 129, construing section 334; Vandewater & Lapp v. Sacks Bldrs. 20 Misc 2d 677). The penalty for failure to comply with the statute is contained within its provisions, and the only penalty so specified is a $25 fine.
Aside from the considerations mentioned above, this court is also of the opinion that the factual situation presented in this proceeding does not fall within the scope of section 334-a. The latter section refers to the subdivision of a tract by an owner or developer. The plots in question are already subdivided, and constitute separate plots, the fee to which is held by three separate owners. The fact that title to these plots is to be acquired by a common grantee does not divest the parcels of their separate identity.
The application is granted and the respondents are directed to issue a building permit to petitioners within five days from the date of service on them of a copy of the order hereon with notice of entry.