John P. Cohalan, Jr., J.
Defendants move (1) to cancel and vacate the notice of pendency of action filed herein and (2) to dismiss the complaint for insufficiency as a matter of law, pursuant to CPLR 3211 (subd. [a], par. 7). No. 1 is granted and No. 2 is denied. Plaintiff’s cross motion for summary judgment is denied.
The complaint prays for judgment enjoining and restraining defendants from selling or offering for sale, lease or rent any part of a tract of land owned by defendants in the Incorporated Village of Nissequogue, Town of Smithtown, County of Suffolk.
Defendants are the owners of 24.8 acres of land within the village. The parcel has existing street and road frontage of 3,200 feet. In August, 1964 defendant, Edward Meixsell, the then owner of record of the entire parcel of land, caused 1 ‘ Map of Land located at Nissequogue ” to be prepared by licensed surveyors. The map shows the property is subdivided into 12 parcels of land, each of different size and road frontage. By a process often referred to as “ checkerboarding ’ ’, defendant Edward Meixsell conveyed portions of the tracts of land to the codefendants, Jean Audrey Meixsell and Dentrac Shopping Plaza, Inc. These deeds were all dated April 5, 1965 and were recorded in the Suffolk County Clerk’s office on April 6, 1965. *1070 The deeds separate the record title so as to avoid record ownership of adjoining parcels under the same name.
No subdivision map was approved or filed as provided for in section 179-m of the Village Law, section 335 of the Beal Property Law and section 1115 of the Public Health Law. Plaintiff claims that all these laws were violated by defendants in failing to obtain the approval of the Planning Board of the village for a subdivision map.. It further contends that defendant should have obtained the approval of the Suffolk County Department of Health pursuant to the provisions of section 1115 et seq. of the Public Health Law. Section 1115 defines a subdivision as follows: “As used in sections one thousand one hundred fifteen to one thousand one hundred eighteen of this chapter, inclusive, the word ‘ subdivision ’ shall mean any tract of land which is hereafter divided into five or more parcels along an existing or proposed street, hightoay, easement or right-of-way for sale or for rent as residential lots or residential building plots¡ regardless of whether the lots or plots to be sold or offered for sale, or leased for any period of time, are described by metes and bounds or by reference to a map or survey of the property or by any other method of description.” (Italics ours.)
Section 335 of the Beal Property Law provides in connection with the subject of maps the following: “ It shall be the duty of every person or corporation * * * who as owner or agent subdivides real property in Suffolk county into lots, plots, blocks or sites, with or without streets, for the purpose of offering such lots, plots, blocks or sites for sale to the public, regardless of how they are conveyed, to file or cause to be filed in the office of the county clerk of Suffolk county a map thereof together with a certificate of the surveyor endorsed on the face of such map certifying same to have been made from an actual survey of the property and the date of the completion of the survey * * *. Likewise, every such subdivision map of property located wholly or partly within an incorporated village, shall before the filing thereof as hereinbefore provided, have endorsed on the face thereof in writing the approval of the planning board of such village, or in a village not having a planning board, the approval of the board of trustees ’ \
Section 179-m of the Village Law provides for the approval of maps for filing and recording the notification as to the filing.
Defendants contend that when they acquired title to the various lots or parcels of land as subdivided between themselves, the village ordinance relating to subdivision maps did not apply to the map caused to be prepared by defendant Edward Meixsell, as there were no new streets, highways or roads shown on the *1071 map. They say further that it was not until seven months after the transfer of title to the various parcels was effected, namely November 22,1965, that the village extended its ordinance so as to include subdivision of property ‘ ‘ with or without streets or highways ”.
On a different tack they contend also that pursuant to the theory of “ single and separate ownership ” set forth in the opinions of the undersigned: Matter of Kollmer v. Horn (Zoning Bd. of Appeals, Town of Huntington) (N. Y. L. J., June 29, 1964, p. 14, col. 7); Matter of Moskeland v. Horn (Zoning Bd. of Appeals, Town of Huntington) (N. Y. L. J., Oct. 28, 1964, p. 21, col. 7); and Town of Smithtown v. Mendozza (N. Y. L. J., Jan. 23, 1967, p. 21, col. 4) the subsequent adoption on November 22, 1967 of the amendment of the ordinance relating to planning board maps of the Village of Nissequogue, was not applicable retroactively to the property of the defendants.
The difficulty with this latter argument is that the “ single and separate ownership ” doctrine is applicable only to parcels of land which are rendered useless by reason of inadequacy in size due to subsequent municipal legislation which forbids the use of such parcels for any .purpose after title is vested in a property owner. We do not have a similar situation in the instant action. The beneficent purpose of subdivision planning would be nullified if defendants could avoid filing of subdivision maps merely by transferring titles or portions of their property.
See Corpus Juris Secundum (vol. 62, Municipal Corporations, § 83, p. 198):
‘ ‘ General Considerations
1 ‘ Municipal planning is designed to preserve the public health and welfare, and to promote an harmonious and a systematic municipal growth in accordance with the needs of the whole community rather than those of any particular area thereof.
‘ ‘ While * planning ’ and 1 zoning ’ are sometimes considered so closely akin as to constitute a single concept, they do not cover identical fields of municipal endeavor and the terms are not interchangeable. Municipal1 planning ’ is a term of broader significance than ‘ zoning ’ and is designed to promote the public health and welfare, and to preserve through a governmental agency a uniform and harmonious development of the growth of a municipality and to prevent the individual owner from laying out streets to his own will without official approval. 1 Planning ’ connotes a systematic development contrived to serve the common interest in matters embraced within the police power, having particular reference to the location, character and extent of *1072 streets, squares and parks, and to the mapping and charting incidental thereto
In Matter of Brous v. Smith (304 N. Y. 164, 168) the Court of Appeals emphasized the importance of municipal planning and stated the following: “ The challenged regulation is an enactment in that important field of legislation concerned with the problem of community planning and designed to secure the ‘ uniform and harmonious development of the growth ’ of our villages, towns and cities and continued (p. 169) as follows: “ The statute reflects a legislative judgment that the building up of unimproved and undeveloped areas ought to be accompanied by provision for roads and streets and other essential facilities to meet the basic needs of the new residents of the area. ‘ We all know that where subdivision of land is unregulated lots are sold without paving, water, drainage, or sanitary facilities, and then later the community feels forced to protect the residents and take over the streets and * * * provide for the facilities ’. (Bettman, City and Regional Planning Papers [1946], p. 74.) ”
The Appellate Division, Fourth Department, in Rochester Business Inst. v. City of Rochester (25 A D 2d 97,103) stated as to construction of applicable statutes: “ As in ail matters dealing with ordinances and statutes, the court must so construe the official map law as to sustain its constitutionality in a given situation if it is possible to do so.” (Also, see, Ann. 11 ALR 2d 524, 532.)
In Stewart v. Stone (130 So. 2d 577) in the State of Florida the court determined that plat laws and regulations enacted pursuant thereto are presumptively valid and will be held so unless the landowner affected by such regulation can establish by competent evidence that the laws are unreasonable as applied to his property. (Also, see, 1964 Opns. Atty. Gen. 108, concerning the application of section 1115 of the Public Health Law.)
A case which has some similarity to the situation presented in the instant action is Pratt v. Adams (229 Cal. App. Div. 2d 602). This citation concerns an appeal from a determination of a Superior Court of the County of Santa Cruz, which denied a writ of mandamus by a property owner against the Building Inspector. Land was subdivided into 38 parcels by use of a consent or stipulated form of judgment of partition which provided that none of 12 parties should have title to more than four lots. Plaintiff contended that the land was subdivided by a decree of the court into less than five lots or parcels for each party and therefore the Subdivision Map Act did not apply to the plaintiff’s property and that the Building Inspector should *1073 issue the building permit. The appellate court in sustaining the denial of the writ of mandamus stated the following which is apropos in the instant action (pp. 605-606):
“ It is to be observed that appellants have purported to divide, within a few months, one parcel into 38 parcels, many more than the 5 parcels which would bring appellants into the category of subdividers, [italics added] without complying with the subdivision laws. But, they say, we did not cause the division from 2 parcels to 12, for the court did this, in the partition proceeding, and surely the court did not contrive to violate the law. And the division into 38 parcels was done by twelve individuals, none splitting his land into more than 4 parcels and hence not being a subdivider, because the number of 5 parcels was not reached.
‘ ‘ These arguments are unimpressive. The court, in the mandamus proceeding, found that the ‘ evidence does not show that plaintiffs disclosed to the Court in partition action No. 33559, Superior Court, County of Santa Cruz, State of California, that the purpose in filing said partition action was to circumvent the state and local subdivision laws. One of the appellants set the partition in motion by filing the complaint; the others, represented by the counsel who also represented the plaintiff, and who is one of the members of the group and one of the parties to this appeal, stipulated to the interlocutory decree. Under the circumstances, it is fair to say that appellants ‘ caused ’ the dividing of the land even though judicial approval of the referee’s report was obtained.
* ‘ The subsequent division into 38 parcels was part of the general scheme to multiply the number of parcels. The plan should be construed as a whole, not as if there were ¡several transactions, each involving not more than 4 parcels.
“ The Subdivision Map Act and the ordinances passed in conformity with it have several salutary purposes, such as: to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas * * * to require subdivider to install streets * * * to require subdivider to install drains * * * to prevent fraud and exploitation * * * and to protect both public and purchaser.
1 ‘ These purposes would be defeated if the courts were to recognize avoidance of the statutes by such use of an action in partition as was devised here. Mandamus is an equitable remedy. It will not be used to compel the performance of acts which are illegal, contrary to public policy or which tend to aid an unlawful purpose. * * * This is not a case in which a building *1074 permit has been denied because of some old violation of subdivision laws, possibly done by predecessors in title to the applicant; it is a case where the permit is sought as a culmination of a plan to circumvent the law by one of the planners. The courts will not assist, by equitable process, the fulfillment of this plan.” (Citing of numerous California cases has been omitted from the quotation.)
For citations supporting the beneficent purposes of the Public Health Law provisions relating to map subdivisions and section 335 of the Real Property Law, see Matter of Gulino Constr. Co. v. Hilleboe (8 Misc 2d 853, 856); Village of Lynbrook v. Cadoo (252 N. Y. 308, 313, 314); Elsinore Property Owners Assn. v. Morwand Homes (286 App. Div. 1105) and Hornbeck v. Towner (14 A D 2d 646).
The motion to vacate and cancel the lis pendens is granted. Article 65 of the CPLR does not apply to the instant action. See Raimonda v. Cahn (26 A D 2d 939): “ ‘To hold that the defendant owners may not wrongfully use their property to the injury of their neighbors does not involve the kind of restrictions or use or enjoyment designed by section 120 of the Civil Practice Act [now CPLR 6501] as furnishing the basis for the filing of a Us pendens’ (Braunston v. Anchorage Woods, 10 N Y 2d 302, 306). In our opinion, defendants ’ motion to cancel the notice of pendency was properly granted (Braunston v. Anchorage Woods, supra; Brooklyn Soc. of New Church v. Delroy Realty Corp., 5 A D 2d 889).”
It may also be noted that whenever the Legislature has seen - a need for the filing of a notice of pendency of action it has not been hesitant to so provide. (See Public Health Law, § 2321, subd. 3; Condemnation Law, § 25 and Multiple Dwelling Law, § 356.)
The cross motion of the plaintiff for summary judgment is denied as there presently appear to be triable issues of fact which should await the event of a trial. Accordingly, motion of defendants to dismiss the complaint is denied with leave to defendants to serve an answer within 20 days after service of a copy of the order to be made herein with notice of entry. The motion of defendants insofar as it seeks the cancellation of the notice of pendency of action is granted. With respect to it the order to be settled herein shall provide, in part, that the said notice of pendency is to be cancelled 30 days after service of a copy of the order with notice of entry, during which time the village may (if it is so advised) apply for a temporary injunction. Cross motion of the plaintiff for summary judgment is denied as hereinabove provided.