Leon D. Lazer, J.
The incessant controversy over the number of lots necessary to constitute a subdivision of land (see *439 Yokley, Law of Subdivisions [1963], p. 3) is continued in this declaratory judgment" action initiated by the owner of a parcel of property in the Village of Westhampton Beach (the “village ”). The plaintiff, whose application for a building permit for a single family dwelling was denied due to failure to abide by local subdivision requirements, now moves for summary judgment declaring the invalidity of the pertinent provisions of the zoning ordinance and subdivision regulations of the village.
Section 2 (e) of article XI of the Westhampton Beach Zoning Ordinance provides that: ‘‘ Before any lot is formed from part of a lot, the owner thereof shall submit the proposed separation or subdivision plan to the Planning Board in duplicate for its approval and determination whether same constitutes a subdivision. Such proposed plan shall show the location of property lines, buildings and other existing features, locations of the lot with reference to existing streets, easements or rights of way, the location, area and dimensions of each of the proposed new lots, and other adjoining lands, if any, to which the owner, directly or indirectly now has or previously had an interest.
“ No building Permit, Certificate of Occupancy or Certificate of Existing Use shall be issued where a new lot proposed to be formed will cause or create a violation of any provision of this ordinance, rule or decision of the Planning Board, or any other statute, law code or ordinance applicable to such premises or any existing or new improvement associated therewith. ’ ’
Section 100 of the village subdivision regulations defines a subdivision as “ the division of any parcel of land into two (2) or more parcels, lots or sites ’ ’.
Belying principally upon section 1115 of the Public Health Law, plaintiff maintains that the village lacks either constitutional or statutory authority to formulate its own definition of the word “ subdivision ” to include the division of property into “two (2) or more parcels.” The Public Health Law definition describes a “subdivision” as a “tract * * * divided into five or more parcels ”. Section 7-728 of the Village Law, upon which the village predicates its authority for adoption of the challenged regulatory provisions contains no definition of the word “ subdivision,” nor do the parallel enabling acts (Town Law, § 276, and General City Law, § 32). All three of these statutes specify simply that the planning board may be empowered (by the local legislative body) “ to approve plats showing lots, blocks or sites, with or without streets or highways. ’ ’
*440 The absence of a “subdivision” definition in planning and zoning legislation is not unique. Fewer than half of the State enabling statutes contain such a definition and most of those which do refer merely to the ‘ ‘ division of a lot into two or more lots” or “three or more lots ” (3 Rathkopf, Law of Zoning and Planning, p. 71-20). The enactments which omit a definition have been construed to authorize each municipality to define the term (3 Anderson, American Law of Zoning, § 19.02), thus reserving to each locality the right to determine one “who subdivides ” or what constitutes a subdivision (Board of Supervisors v. Georgetown Land Go., 204 Va. 380). Whether a similar construction is warranted here depends upon interpretation of the meaning and rationale not only of the enabling acts but of related legislation.
Governmental regulation of1 the land development process has increased appreciably in the last 25 years in response to environmental problems and heightened expectations (American Law Inst., a Model Land Development Code [Tent. Draft No. 1,1968] Commentary on art. 3, p. 177). It represents a legislative judgment that community development be accompanied by the furnishing of adequate public facilities to meet present and future needs while providing for the housing, distribution, comfort and convenience of local residents (see Golden v. Planning Bd. of Town of Ramapo, 30 N Y 2d 359, app. dsmd. 409 U. S. 1003; Brous v. Smith, 304 N. Y. 164; Village of Lynbrook v. Cadoo, 252 N. Y. 308). The emergence of regulatory power over land, subdivision as a principal tool of urban planning results from the fact that modern dwelling construction has long since departed the concept of individual buildings, constructed singly and gradually, and sufficiently controlled by zoning ordinances and local health, building, plumbing and electrical codes alone (3 Rathkopf, supra, pp. 71-2, 171-6). Subdivision control is designed to complement other land use restrictions which, taken together, seek to implement a broader comprehensive plan for community development (Golden v. Planning Bd. of Town of Ramapo, supra). It is born of necessity, for “ the baneful consequences of haphazard development are everywhere apparent ’ ’ (Mansfield & Swett v. Town of West Orange, 120 N. J. L. 145).
Although the delegation by the State of subdivision control authority is not coterminous with the broadly stated police power objectives in the enabling legislation, the exercise of the zoning power .must find its constitutional predicate in such laws (Golden v. Town of Ramapo, supra). In Golden, the Court of Appeals determined that the disputed exercise of the zoning *441 power was valid even though it was not specifically included in the recital of purposes in section 261 of the Town Law. Golden is ¡a logical (albeit far-reaching) extension of the ¡well-settled principle that a municipality is empowered to fashion an over-all plan ¡suitable to its particular location and needs as a matter of purely local legislative discretion (Nehrbas v. Incorporated Vil. of Lloyd Harbor, 147 N. Y. S. 2d 738, mod. on other grounds 1 A D 2d 1034, affd. 2 N Y 2d 190; Fox Meadow Estates v. Culley, 233 App. Div. 250, affd. 261 N. Y. 506).
Where subdivision control has failed it has largely been due to narrow statutes, inadequate implementation and overly strict interpretation (Note, Land ¡Subdivision Controls, 65 Harv. L. Rev. 1226, 1237). The dynamic character of the police power in connection with zoning has the potential, the progressive capacity and the flexibility to meet and solve new problems in the light of the latest and most advanced knowledge (8 McQuillin, Municipal Corporations, § 25.05). Although the Golden court alluded to the notion .of absolute local control as “ largely antiquated ” (30 N Y 2d p. 374), it strongly counseled a policy of “ judicial self-réstraint ” and ultimately sustained a regulatory scheme under which an owner’s exercise of the right to develop property in undeveloped areas could be deferred by the Town of Ramapo for periods extending up to 18 years. This tolerant judicial approach to a significant expansion of the local power to restrict land use is consonant with progressive legislative policy toward the increase of specifically delegated prerogatives in the area of subdivision control. The original power to review plats showing new streets or highways (Village Law, § 179-k, added by L. 1926, ch. 719; Town Law, § 276, added by L. 1932, ch. 634; General City Law, § 32, added by L. 1926, ch. 690) has been augmented to cover those “ with or without streets or highways ” (L. 1959, ch. 296, amdg. Village Law, § 179-k [now § 7-728] ; L. 1958, ch. 761, amdg. Town Law, § 276; L. 1962, ch. 782, amdg. General City Law, § 32); municipalities have been empowered to authorize planning board approval of resubdivision of previously filed maps (Village Law, § 179-K, as amd. by L. 1958, ch. 471; Town Law, § 276, as ámd. by L. 1956, ch. 797) and, to encourage the “ cluster” concept, they have been empowered to permit the modification of zoning regulations in the course of acquiring requisite public facilities or preserving environmental qualities as a condition of subdivision approval (Village Law, § 179-p, as amd. by L. 1965, ch. 104, renumbered § 7-738 by L. 1972, ch. 892; Town Law, § 281, as amd. by L. 1963, ch. 963, formerly *442 § 149-r, re-enacted under present number by L. 1932, ch. 634 [see Rouse v. O’Connell, 78 Misc 2d 82]; General City Law, § 37).
Enabling enactments provide local planning boards with discretion in dealing with subdivisions provided they act within the bounds of regulations approved by the local governing body (Villa-Laken Corp. v. Planning Bd., 138 N. Y. S. 2d 362) and the delegation to local governments vests in them the fullest and most complete powers possible concerning the subject matter of municipal planning (Yokley, supra, p. 23). The imposition of subdivision controls is an exercise of the police power which has consistently been upheld (Johnston, Constitutionality of Subdivision Control Exactions: The Quest for a Rationale, 52 Com. L. Q. 871); While the construction espoused by plaintiff would limit municipal capacity to implement long term comprehensive plans, its immediate consequences are more apparent. The ‘ ‘ checkerboard ’ ’ device would be. immeasurably enhanced (see Incorporated Vil. of Nissequogue v. Meixsell, 55 Misc 2d 1069, affd. 32 A D 2d 1029; see, also, Adams v. Incorporated Vil. of Westhampton Beach, 71 Misc 2d 579); developers of less than five lots would escape the statutes which authorize the setting aside of land or the requirement of payments for park, playground or recreational purposes (Village Law, § 7-730; Town Law, § 277; General City Law, § 33; see Jenad Inc. v. Village of Scarsdale, 18 N Y 2d 78; cf. Reggs Homes v. Dickerson, 16 Misc 2d 732, affd. 8 A D 2d 640); the installation of curbs, sidewalks and other street improvements could not be imposed (Catalfamo v. Zirk, 22 A D 2d 802).
Plaintiff’s position is not wholly reliant upon its conception of the breadth of local discretion. It urges that the Public Health Law definition constitutes specific restrictive language applicable to 'section 7-728 of the Village Law, and, in support, it cites a number of decided cases (see, e.g., Incorporated Vil. of Nissequogue v. Meixsell, supra; Suffolk County Bldrs. Assn. v. Town of Islip, N. Y. L. J., Feb. 28, 1974, p. 21, col. 3; West Lane Homes Inc. v. Town of Islip, N. Y. L. J., July 2, 1971, p. 11, col. 4; Ashmill Homes v. Town of Islip, N. Y. L. J., Dec. 4, 1969, p. 18, col. 2, app. dsmd. 36 A D 2d 541). Although the Village of Nissequogue ease may he distinguished as dealing with an attempt to evade the Public leaith and Real Property Laws and not with interpretation of ;. -e Village Law, Suffolk County Bldrs. Assn. v. Town of Islip (supra) is wholly accordant with plaintiff’s position (but see dictum in Adams v. Incorporated Vil. of Westhampton Beach supra).
*443 The Public Health Law definition of “ subdivision ” relates to control of water and sewerage service to real estate subdivisions by local or State departments of health which are charged with the duty of determining whether the plans submitted show satisfactory sewerage facilities and methods for obtaining an adequate water supply (§ 1116, subd. 2; People ex rel. Lefkowitz v. Carlson, 12 A D 2d 873; Gulino Constr. Corp. v. Hilleboe, 8 Misc 2d 853) in accordance with standards established in 10 NYCRR Part 74. The statute exists to protect public health (Gulino Constr. Corp. v. Hilleboe, supra) and the exemption of tracts of less than five parcels has as its apparent intent the exclusion of subdivisions which are so small that their water and sewage problems are unlikely to pose a threat to the health of the community or to its financial stability (3 Anderson, supra, § 19.-02). When section 1115 of the act was first adopted in 1933 (L. 1933, eh. 403) it contained no definition of the word “ subdivision,” providing instead that it “ shall not apply to any subdivision of property upon which dwellings for less than ten families may be constructed ’ \ The current definition was added in 1952 (L. 1952, ch. 66) and, according to a contemporary legislative memorandum, its purpose was to eliminate the circumvention of the statute by the division of subdivisions into sections consisting of fewer than 10 lots and by other methods (State Health Department Memoranda, 1952 N. Y. Legis. Annual, p. 238). The historical record of this legislation is devoid of any evidence which would substantiate the theory that the 1952 endeavor to stifle evasion was also intended to restrict existing powers of local governments to regulate the subdivision of land.
The cited triad of enabling statutes has been more recently joined by a fourth, subdivision 7 of section 239-d of the General Municipal Law (L. 1963, ch. 708, § 2). That act affords subdivision review jurisdiction over land in towns' (likely rural or less populated) which have not chosen to create their own planning boards or to adopt their own subdivision regulations. In those circumstances, the county or regional planning board is authorized to adopt and apply such regulations in accordance with the requirements of section 277 of the Town Law (which are analogous to those in Village Law, § 7-730, and General City Law, § 33). The similarity of the four statutes is not complete, however, for, in enacting subdivision 7 of section 239-d the Legislature defined a subdivision as a “ division of any parcel of land into two or more lots, blocks or sites, with or withomt streets or highways.” The definition contained in the more *444 recent enactment leads ineluctably to the conclusion that regulation of the bisectioning of land is not limited to areas whose governing bodies are least interested in land use restrictions.
■Statutes which relate to the same thing or class of things are in pari materia and may be construed together (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 221). A subsequent act in pari materia may aid in determining the legislative intent of an earlier statute (New York Cent. and Hudson Riv. R. R. Co. v. Williams, 199 N. Y. 108) and a new enactment of fragmentary nature is taken as intended to fit into existing laws on the same subject unless a different purpose is clearly shown (United States v. Jefferson Elec. Mfg. Co., 291 U. S. 386; City of Rochester v. Union Free School Dist. No. 4, 255 App. Div. 96, rearg. den. 255 App. Div. 752, affd. 280 N. Y. 531). If the three earlier enabling statutes are read with the General Municipal Law section, the power to review the division of land into two lots must be deemed to extend to the three principal classifications of municipal entity. But if it is only section 1115 of the Public Health Law which is read with the three acts the result is paradoxical — the priority of need is reversed — the greater the local commitment to supervision of the land development process the lesser the subdivision control authority afforded to do so, the less concerned the town (so that it is subject to subdivision 7 of section 239-d) the more restrictive the control of its land resources. Statutes must be construed to avoid an absurd result (Matter of Chatlos v. McGoldrick, 302 N. Y. 380; Matter of 89 Christopher v. Joy, 44 A D 2d 417), for such a purpose is not to be attributed to the Législature (Matter of Ross v. Cohen, 175 Misc. 43, affd. 259 App. Div. 1020, affd. 283 N. Y. 388). If such a result and purpose are to be avoided here, all four of the cited enabling enactments must be construed to vest the same degree of subdivision jurisdiction in the local agencies concerned. It is therefore the holding of this court that a village board of trustees by ordinance or a planning board by regulations can define the term “ subdivision ” to include the division of land into two or more lots.
As its final argument, plaintiff asserts in its law memorandum that the filing and approval requirements imposed upon subdivisions under the village regulatory scheme are void because jurisdiction over the filing of plats is pre-empted by section 335 of the Real Property Law. The purpose of the filing requirement in section 335 is to provide a public record of each subdivision map for the sake of definiteness and clarity (Matter of *445 City of New York [East 177th St.], 239 N. Y. 119; Matter of Jack Homes Inc. v. Baldwin, 39 Misc 2d 693; Vandewater & Lapp v. Sacks Bldrs., 20 Misc 2d 677; 3 Rathkopf, supra, p. 71-122). By dialectic analysis, plaintiff concludes that local governments lack the statutory authority to compel the filing of plats with local regulatory agencies; that only if the plat is to be filed pursuant to the Real Property Law does it require local approval. In essence, then, it is plaintiff’s contention that local subdivision control authority is merely corollary and subordinate to the filing requirements of the Real Property Law. While that statute has its own fundamental recording purpose, it originated well before the significance of land use restrictions was comprehended and it has gradually evolved into a mere final step in the process of subdividing land, in which the planning considerations are primary (see Johnston, Land Use Control, Annual Survey of American Law 49, 66 [1969/1970]). Indeed, the recording statute can be construed as one of the enforcement devices in the land use control structure created by the Legislature (see 3 Anderson, supra, § 19.04). Another such enforcement device is the withholding of building permits. Although the State Comptroller has expressed the belief that neither a planning board nor a local governing body has the power to compel a subdivider to submit a plat for approval (1963 Opns. St. Comp. 922), local regulations which prohibit the issuance of a building permit prior to such approval are routine (2 Anderson, supra, i§ 13.02; see Fullam v. Kronman, 31 A D 2d 947, affd. 26 N Y 2d 725; Incorporated Vil. of Nissequogue v. Meixsell, supra). Plaintiff’s position ultimately rests upon the validity of its earlier theory of highly restricted local discretion in the the area of land use controls. The theory is as fallacious here as it has been determined to be in the area of subdivision definition. Implicit in the power to control subdivisions is the authority to prevent illegal development by denial of permission to build, else the building inspector’s ability to enforce the local zoning ordinance (see, e.g., Village Law, § 7-714; Town Law, § 138) would suffer from a substantial anomaly. He could deny a permit to build upon lots which would violate use or area restrictions of the ordinance, but not upon those which were created in defiance of the ordinance.
In view of the instant disposition, serious consideration need not be given to defendants’ contentions that prior litigation between • the plaintiff and the Village or its agencies is res judicata of the instant issues or that fact issues exist. Neither contention is valid.
*446 Summary judgment is denied to the plaintiff and granted to the defendants pursuant to subdivision (b) of OPLB 3212.
Settle judgment declaring the validity of the challenged provisions of the zoning ordinance and subdivision regulations.