OPINION OF THE COURT
Loren N. Brown, J.
By notice of petition, and petitions with exhibits, the petitioners seek a judgment directing the respondent to approve the petitioners’ site plan and preliminary subdivision for the development of lands in the Town of Bolton (Town) entitled Bell Harbour I-A, and Bell Harbour III, directing that the Town of Bolton Planning Board has no jurisdiction over the review of the projects as subdivisions, and striking that portion of the subdivision regulation defining a condominium as a subdivision. The petitions are opposed in all respects.
These petitions concern two parcels of land on the east and west sides of Route 9N in the Town of Bolton, Warren County, New York. The area in which these parcels are located is zoned general business (GB-5000). In the fall of 1983, the petitioners applied to the Planning Board for approval for site plan review and preliminary subdivision approval for a proposed condominium called Bell Harbour I. In a decision, dated December 15, 1983, the application was denied. A petition to the New York *762 State Supreme Court was made pursuant to CPLR article 78 challenging the denial of the application for site plan approval. Justice William J. Crangle dismissed the petition without prejudice, and remanded the case to the Planning Board for a decision supported by findings of fact adequate for review. Thereafter, the proposal for Bell Harbour II was submitted and rejected. The rehearing on Bell Harbour I, pursuant to the order of Justice Crangle, was subsequently held. Bell Harbour I was then revised and called Bell Harbour I-A, and an application for Bell Harbour I-A was denied. Prior to July 25, 1984, the petitioners applied for approval of Bell Harbour III, and were denied on September 27, 1984. The denials of I-A and III are now the subjects of review, pursuant to article 78.
In challenging the Planning Board’s determination, the petitioners first allege that the proposed projects comply with the zoning ordinance and subdivision regulations of the Town of Bolton, and that the denials were based upon invalid reasons, i.e., a dissatisfaction with the present zoning regulations. Second, the petitioners allege that the Planning Board exercised discretion in excess of any powers granted to them by Town Law § 274-a, and in an arbitrary and capricious manner. The petitioners, also, allege that a condominium is not a subdivision, and should not be subject to subdivision approval. In opposition, the respondent contends that the Planning Board has the authority to disapprove site plans, pursuant to Town Law § 274-a, that its decisions were made pursuant to the regulations contained in the zoning ordinance, and that having made its determinations, pursuant to the ordinance, the Planning Board did not act arbitrarily or capriciously. The respondent, also, alleges that the petitioners are estopped from contesting the determination of the Planning Board. It is, finally, alleged that, even if the petitioners are not estopped from raising the issue, condominiums are subdivisions, and are subject to subdivision approval.
SITE PLAN REVIEW
Preliminarily, the court finds from the record that, concerning site plan review, there are sufficient differences between the various Bell Harbour plans to negate any claim of collateral estoppel. Also see discussion of estoppel, infra.
In regard to the remaining issues, the court starts its discussion with the principle that municipalities have no inherent power to enact zoning regulations. (Matter of Kamhi v Town of Yorktown, 59 NY2d 385.) Any power they may have by which to zone is derived from State enabling statutes, which delegate the *763 power to the Town, in this case Town Law §§ 261, 274-a. Section 261 gives the Town Board power to zone for the public good by passing an ordinance which regulates and restricts “the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes”. In 1976, Town Law § 274-a was enacted to authorize the Town Board to delegate power to the Town Planning Board “to review and approve, approve with modifications or disapprove site plans, prepared to specifications set forth in the said zoning ordinance or local law and/or in regulations of the planning board, showing the arrangement, layout and design of the proposed use of the land shown on such plan.” (Town Law § 274-a [1] [a].) Because the Town Planning Board is the creature of the Town Board, and receives its powers through delegation from the Town Board, it, of course, has no more powers than those given by Town Law § 261 to the Town Board.
Section 261 gives the Town Board, and, in turn, the Planning Board the authority to formulate for the public good the pattern for growth by which the Town should achieve orderly development. It gives the towns the ability to prevent haphazard growth and to deter dangerous and undesirable activities. Section 261 does not, however, give the towns carte blanche. In order to achieve the public good, they must establish definite standards and regulations. By circumscribing growth using rationally and clearly defined regulations, the Town development can be properly channeled.
THE NATURE OF THE ZONING ORDINANCE
The zoning ordinance of the Town of Bolton contains 18 articles, but most relevant to this litigation are portions of articles 4 and 5. Section 4.020Í of article 4 sets forth the type of uses which may be introduced into a GB-5000 zone, permitted accessory uses, minimum size of lots, minimum yard setbacks, maximum percentage of lot to be occupied, maximum height of building, shoreline restrictions, and permitted density. In article 5, the ordinance attempts to establish guidelines for site plan review.*
*764 THE PROPRIETY OF THE PLANNING BOARD’S DETERMINATIONS
As discussed, supra, Town Law § 261 requires that specific standards be incorporated in the zoning ordinance. Nowhere in either enabling statute, supra, is to be found authority for the Town Planning Board to make a subjective determination of the appropriateness of the proposed project, or any project, using the very nebulous generalities contained in §§ 5.010, 5.070. They contain no reliable, concrete standards upon which an objective determination could be made by the Planning Board, pr following which a builder could formulate a proposed project. In fact, the ordinance is so lacking in specificity that virtually any application could be deemed objectionable.
Accordingly, the Planning Board’s determination to deny applications for site plan approval made using the standards set forth in article 5 must be nullified as both beyond the power of the Planning Board and arbitrary.
*765 SUBDIVISION REVIEW
The respondent’s contention that the petitioners are estopped to challenge the applicability of the subdivision regulations is without merit. The order of Justice Crangle was not on the merits, was without prejudice, and could not bar the determination of the issues in these proceedings. (McGillicuddy v Monaghan, 201 Misc 650, affd 280 App Div 144.)
The court must, next, determine if a condominium should be subject to subdivision approval.
The court has found no pertinent enabling statute which has defined a subdivision, and because the State has neglected to define the nature of a subdivision in this contest, the Town of Bolton is authorized to define the term. (Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach, 79 Misc 2d 438, affd 48 AD2d 681, affd 39 NY2d 1029.) The Town has defined subdivision in section 2.25 of the subdivision regulations ,which provides that for the purpose of the regulations that a condominium shall be reviewed as a subdivision.
Finally, the court has read the subdivision regulations and it finds that, unlike the site plan review standards, the standards for reviewing subdivisions are extensive and sufficiently precise. Moreover, the written decisions denying the applications were, in part, based upon the standards set forth in the subdivision regulations.
Accordingly, though the decision to deny site plan review must be set aside, the court will not substitute its judgment for that of the Planning Board made pursuant to exacting standards when it denied subdivision approval.
In summary, the denials of site plan review are set aside. All other aspects of the petitioners’ applications are, in all respects, denied.

 “§5.010 Purpose of Article. The purpose of this article is to allow the proper integration of uses into the community which are listed in Article 4 and 7 of this Ordinance which may be suitable within the zoning district only on certain conditions and only at appropriate locations. Because of their characteristics, or the special characteristics of the area in which they are to be located, these uses require special considerations so that they may be properly *764 located and planned with respect to:
“1. The objectives of this Ordinance.
“2. Their effect on surrounding properties.
“3. The ability of the Town to accommodate the growth resulting from the proposed use without undue adverse effect on the Town and its citizens and taxpayers, and the protection of health, safety and welfare of the Town and its citizens, and
“4. The objectives of the Land Use Plan.
“§5.060 Criteria for Review of Type I and Type II Site Plan Review.
“(a) * * *
“(b) The Planning Board shall not approve a use unless it first determines that such site plan review use meets the site plan review standards and requirements of Section 5.070 and that such site plan review use meets any additional standards and requirements of Article 7 applicable to that use.
“§5.070 Requirements for Type I and Type II Site Plan Review.
“In order to approve any Type I or Type II site plan review use the Planning Board shall find that:
“(a) the use complies with all other requirements of this Ordinance, including the dimensional regulations of the zoning district in which it is proposed to be located, and
“(b) The use would be in harmony with the general purpose and intent of this Ordinance, specifically taking into account the location, character, and size of the proposed use and the description and purpose of the district in which such use is proposed, the nature and intensity of the activities to be involved in or conducted in connection with the purported use, and the nature and rate of any increase on the burden of supporting public services and facilities which will follow the approval of the proposed use; and
“(c) The establishment, maintenance or operation of the proposed use would not create public hazards from traffic, traffic congestion, or the parking of automobiles or be otherwise detrimental to the health, safety or general welfare of persons of such proposed use, or be detrimental or injurious to the property and improvements in the neighborhood or to the general welfare of the Town; and
“(d) The project would not have an undue adverse impact upon the natural scenic, aesthetic, ecological, wildlife, historic, recreational or open spaces resources of the Adirondack Park or upon the ability of the public to provide supporting facilities and services made necessary.”