Jack Stanislaw, J.
In this article 78 proceeding, petitioner presents a determination of the Planning Board of the Town of Brookhaven for review.
Walton, the petitioner, owns roughly 120 acres in Stony Brook, Brookhaven Township. On August 19, 1963 he submitted a proposed subdivision map regarding this acreage to respondent Planning Board, in accordance with article II of the applicable town Subdivision Regulations. After reviewing the map various modifications were admittedly requested. One week later a first revised map was offered. A second revision was made and offered on September 3, 1963. Then public hearings were held September 16 on the subdivision as appropriately modified, but on October 7, 1963 the board resolved to deny approval in these words: ‘ The proposed subdivision known as ‘ University Heights at Flowerfield ’ received a preliminary hearing. Edward Schoppe, engineer from the firm of Baldwin and Cornelius, was present on behalf of the subdivision. After considerable discussion and review, and on a motion by Mr. Borneo, seconded by Mr. Marchant, and unanimously carried, the Board voted to deny tentative approval to the proposed subdivision known as University Heights at Flowerfield, because the Town Board has been conducting hearings for a proposed upzoning of the area, for which a decision is still pending.” Respondents further add now that they felt that approval of this map would “not be consistent with sound planning ” when upzoning was being considered by the Town Board.
It has not been denied that petitioner’s preliminary layout as revised complied with all requirements set forth in the subdivision regulations as well as those additionally specified *800 as necessary for final plat approval (Subdivision Regulations, art. III). On the other hand, the board here displays these regulations and points to the fact that two steps are required for approval of any subdivision plan. Article II deals with the preliminary layout, and states at section 200 that ‘1 Approval of the preliminary layout does not constitute an approval of the final plat ’ ’. Final approval is covered in section 300 of article III (the second step): the final plat “ include (s) the recommendations resulting from the Planning Board review of the preliminary layout ”, which then “ becomes the basis for construction of the subdivision ’ ’ after 11 approval by the Planning Board ”. Respondent has therefore moved to dismiss the petition as premature and insufficient, since no final decision has been had, and alternatively because the entire matter is subject to a rehearing (CPLR 7801, subd. 1).
Where an administrative determination may be reconsidered pursuant °to statutory authority, it is not amenable to an article 78 proceeding (CPLR 7801, subd. 1). Review of final action only is envisaged, with citation on this point so extensive as to render example unnecessary. But this qualification of review normally arises as to decisions of Town Boards or other legislative or administrative units not otherwise specifically provided for by statute. However, a planning board’s decision, whether actually final or not, is not subject to such qualification for review. Section 282 of the Town Law provides that “ Any person or persons, jointly or severally aggrieved by any decision of the planning board concerning such plat or the changing of the zoning regulations of such land # * * may have the decision reviewed by a special term of the supreme court in the manner provided by article seventy-eight of the civil practice law and rules ” (emphasis supplied). This section provides for a particular, clear exception to the .limitation on review found in subdivision 1 of section 7801 of the Civil Practice Law and Rules, based upon the availability of a rehearing.
We can discover what is meant by the reference to “ such plat ” in section 282 of the Town Law by referring to the first and fourth sentences of section 276 (subd. 1) thereof: “ For the purpose of providing for the future growth and development of the town * * * such town board may by resolution authorize and empower the planning board to approve plats showing lots, blocks or sites * * * The planning board may thereupon approve, modify and approve, or disapprove such plat.” (Emphasis supplied.)
The existence of a planning board in the first instance is provided for by section 272 of the Town Law and its authorized *801 powers are spelled out in succeeding sections. In fact, respondent’s Subdivision Regulations acknowledge adoption pursuant to section 272. Tracing the limits of a planning board’s powers we have already observed (§ 276) that it can do any one of three things with regard to a plat submitted: it may ‘ ‘ approve, modify and approve, or disapprove such plat.” By the use of •the disjunctive “ or ” there is no allowance made for this planning board’s reaction to this petitioner’s plat — it was modified and disapproved. Such conduct is simply not within the board’s jurisdiction. As a statutory creation, respondent’s action cannot exceed the scope of creating statutes nor can the Town Board unilaterally add to or otherwise extend this scope. In this case respondent has thus acted outside the furthest limits prescribed by the Town Law, and its action must be deemed a nullity. A plain reading of the section 276 must lead to the conclusion that where a plat is modified it must then be approved (assuming compliance with modifications or revisions). Apparently disapproval is required at first, and not after an applicant has incurred expense and expended effort to meet recommendations made upon primary submission of a plan. Moreover, referring to the town’s regulations in this case, the final plat and its approval follow almost as a formality. Section 300 of the Subdivision Regulations refers to the final plat as the one, fully documented and charted, which has obtained the approval of the Planning Board. No indication is given of any further steps required prior to the filing of the map, either in the Town Law or in these regulations.
Walton’s plat was modified, and upon compliance it then seems that the plat must be approved. (Villa-Laken Corp. v. Planning Bd., 138 N. Y. S. 2d 362.) The disapproval here resolved, on October 7, 1963, being illegal, this matter must be remanded to the planning board for further action consistent with statutory requirements.
Even absent the circumscription of the board’s powers, the result would be unchanged. Although respondent had initial power to approve or reject preliminary layouts (cf. Matter of Mahopac Isle v. Agar, 39 Misc 2d 1), it did seek and obtain compliance with the Subdivision Regulations. But ultimately the maps were turned down, the reasons given being only specified as the possibility of rezoning by the Town Board. No mention is made of any failure to comply with regulations. Admittedly, the planning board negated the maps solely to prevent petitioner’s acquisition of vested rights prior to a (contemplated) change of zone which may or may not have followed shortly afterwards. The blatantly stated basis of disapproval *802 is representative of precisely the type of administrative irresponsibility condemned time and again by the courts. (Matter of Dulow v. Ross, 254 App. Div. 706; Paliotto v. Town of Islip, 31 Misc 2d 447 and 36 Misc 2d 161; Matter of Three Vil. Corners Shopping Center v. Lange, 36 Misc 2d 146; Matter of Feist Realty Corp. v. Johanson, 33 Misc 2d 376; Matter of Harris v. Coffey, 14 Misc 2d 916, affd. 6 A D 2d 898; Matter of Jayne Estates v. Merritt, 210 N. Y. S. 2d 252.)
There have been cases in which, having established or presumed willful delay, relief has been nevertheless denied because there had been no vesting of rights in the party asking relief. (Matter of Atlas v. Dick, 192 Misc. 843, revd. 275 App. Div. 670, affd. 299 N. Y. 654; Matter of Gramatan Hills Manor v. Manganiello, 30 Misc 2d 117; Matter of Rodelli v. Burns, 19 Misc 2d 562.) However, these decisions and similar others dealt with situations where the objectionable delay had already accomplished the presumably intended result of interim change which deprived the petitioner of any chance for relief. The rationale seemed to be a current lack of capacity to take issue with administrative action because of the absence of a then tangible grievance. After the collateral change and without petitioner’s demonstrably measurable loss, it was held that no remediable harm could have been sustained.
Here, Walton has shown no change of position, but neither has there been an upzoning as “ expected ”. A vested right is not required in this instance for the stage has not yet been reached where petitioner must look to gain a right, based upon delay, in the face of his own and the board’s changed circumstances. But regardless of the theories supporting review and reversal for unexplained procrastination or disallowing relief for lack of vested rights, this court is greatly disturbed by the attitude manifested by this board. It is a serious situation in which the view of the local governing body is reacted to by seemingly responsible administrative bodies as the quintessence of all wisdom, superior to obvious individual rights.
The petition must be granted and the plat as modified approved, absent any showing that revisions remain unexecuted. Pending approval the Town Board shall be stayed from all further proceedings with respect to the property shown on Walton’s plat, so far as any rezoning thereof. Of course, submission of an improper final plat or failure to comply with other requirements for final approval may result in a proper refusal of the final plat by the Town Board and the lifting of the stay aforesaid.
*803 Walton’s collateral suit for damages, pursuant to section 51 of the General Municipal Law or alternatively for an injunction restraining zoning change until approval of his map, or declaratory judgment that he be permitted to file his final plat, is premature. Better procedure would seem to dictate the disposition of the instant article 78 proceeding as set forth herein in order to avoid the clear possibilities of confusion lurking in further changes of position on either side. After resolving the question of the ultimate status of the proposed layout at the Town Board level Walton may proceed as he be advised, but in the meantime his action for any of the three kinds of relief shall also be stayed.