In the Matter of SUN BEACH REAL ESTATE DEVELOPMENT CORP., Respondent, v CHARLES ANDERSON, as Town Clerk of the Town of East Hampton, et al., Appellants.

Second Department, December 27, 1983

### APPEARANCES OF COUNSEL

*Smith, Finkelstein, Lundberg, Crimmins & Yakaboski* (*Frank A. Isler* of counsel), for appellants.

*Esseks, Hefter, Cuddy & Angel* (*William W. Esseks* and *James Heffron* of counsel), for respondent.

### OPINION OF THE COURT

LAZER, J.

Under the Town Law, a planning board which fails to act on a preliminary subdivision plat application within 45 days is deemed to have approved the preliminary plat (Town Law, § 276, subd 3). What we now decide is how that rigorous mandate for prompt action interacts with the State Environmental Quality Review Act (SEQRA) (ECL 8-0101 *et seq.*) requirement that an application for a permit

or authorization shall not be deemed complete until a draft environmental impact statement (DEIS) has been accepted by the agency principally responsible for the approval (ECL 8-0109, subd 5).

Having been found in violation of the Town Law time restriction in processing petitioner's 777-acre subdivision plat, East Hampton's Planning Board argues that the 45-day time limit did not even begin to run until the board accepted petitioner's DEIS and that 45 days was too short a time for the board to meet its SEQRA obligations. Victorious at Special Term, the petitioner disagrees, contending that the 45-day time limit is an absolute one and that it is unaffected by any provision of SEQRA. We believe that preliminary plat approval determines important design features of a subdivision and therefore SEQRA's mandate for early meaningful consideration of the environmental consequences of a project requires environmental review to be undertaken when a preliminary plat application is filed. Once the East Hampton Planning Board determined that a DEIS was necessary, the preliminary plat application was not complete until the DEIS was accepted by the board. As a consequence, the time requirements of the Town Law did not commence running until after that acceptance.

On July 29, 1982, Sun Beach Real Estate Development Corp., the owner of a 777-acre tract in the Town of East Hampton, applied to the planning board for preliminary approval of a subdivision plat which showed a proposed development of 188 one-family residences and 143 condominium units. Attached to the application was an environmental assessment form (EAF) intended to assist the planning board in determining the environmental significance of the application (see 6 NYCRR 617.2 [*l*]). By letter dated September 7, 1982, the planning board informed Sun Beach that its application would be processed when it was complete, i.e., when the board issued a determination that the preliminary approval was of no environmental significance or when it accepted a DEIS if it decided there was environmental significance. Relying on subdivision 3 of section 276 of the Town Law, on October 15, 1982, Sun Beach demanded a certificate from the town clerk granting preliminary plat approval because the planning board had

failed to hold a hearing on the plat within 45 days after submission of the application. On October 27, 1982, 90 days after the application had been filed, the planning board determined that the subdivision might significantly affect the environment and accepted as satisfactory a DEIS the applicant had submitted in mid-September, more than 45 days after filing of the application. A hearing was scheduled for December 8, 1982 to consider both the DEIS and the preliminary plat approval application. In January, 1983, Sun Beach brought this proceeding pursuant to CPLR article 78 against the town, the town clerk and the planning board seeking judgment directing issuance of a certificate of preliminary plat approval. Special Term granted the petition and directed the town clerk to issue the certificate. That judgment is at issue here.

There can be no doubt that absent SEQRA's requirements, Sun Beach would have been entitled to the approval certificate because default statutes such as section 276 of the Town Law and similar provisions governing city and village planning authorities (see General City Law, § 32; Village Law, § 7-728) have been uniformly construed to require automatic approval upon the failure to act within the prescribed time limits (see, e.g., *Matter of Pekar v Town of Veteran Planning Bd.*, 58 AD2d 703; *Matter of Wallkill Manor v Coulter*, 40 AD2d 828, affd 33 NY2d 783; *Matter of Northern Operating Corp. v Chamberlain*, 34 AD2d 686, affd 31 NY2d 704; *Matter of Fishman v Arnzen*, 29 AD2d 954; *Matter of Scarsdale Meadows v Smith*, 20 AD2d 906; *Matter of Levin v Thornbury*, 2 AD2d 774). None of the cited cases dealt, however, with the co-ordination between existing subdivision approval procedures and the SEQRA process. Recognizing the impact of SEQRA, the town contends that when section 276 of the Town Law is harmonized with SEQRA, the time limits imposed by the Town Law do not commence to run until the planning board has accepted a DEIS.

It is a familiar canon of statutory construction that apparently conflicting statutory provisions should be harmonized in a manner that preserves the essential purposes of both (*Matter of Burger King v State Tax Comm.*, 51 NY2d 614; *Matter of Lumpkin v Department of Social*

*Servs.*, 59 AD2d 485, affd 45 NY2d 351; McKinney's Cons Laws of NY, Book 1, Statutes, § 98). Since Sun Beach claims there is no conflict, it is necessary to examine the requirements of SEQRA to see if they can be integrated into existing subdivision approval time limits, and if they cannot, to decide whether there is any reasonable method to reconcile the two statutes.

SEQRA's procedures are intended to minimize to the greatest degree possible the adverse environmental consequences of any project that is approved. In *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay* (88 AD2d 484, 486-487) we summarized the procedure as follows: "As early as possible in the SEQRA process, the agency 'having principal responsibility for carrying out or approving' a given project or activity — the 'lead' agency (ECL 8-0111, subd 6) — must determine whether an environmental impact statement (EIS) should be prepared with reference to the proposal submitted (ECL 8-0109, subd 4; 8-0111, subd 6). If the lead agency determines that the project 'may have a significant effect on the environment', either the agency or the applicant — at the latter's option — must prepare a draft environmental impact statement (DEIS) (ECL 8-0109, subds 2, 4). If the draft statement is accepted by the agency 'as satisfactory with respect to scope, content and adequacy', it is then circulated to the DEC, other agencies having an interest in the proposal, and 'interested members of the public' (ECL 8-0109, subds 4, 5; 6 NYCRR 617.8 [b]; 617.10). After allowing a period for comment, the lead agency must prepare a final environmental impact statement (FEIS) and circulate it in the same manner as the draft statement (ECL 8-0109, subds 4, 5, 6; 6 NYCRR 617.10 [h]). Finally, upon adoption of the environmental-affecting proposal by the lead agency, it is required to make explicit findings that (1) the requirements of SEQRA have been met, and (2) adverse environmental effects revealed in the EIS process will be minimized or avoided to the maximum extent possible (ECL 8-0109, subd 8; 6 NYCRR 617.9 [c])."

It is undisputed that development of petitioner's 777-acre tract will have environmental reverberations and that the instant subdivision process constitutes an "action"

which invokes SEQRA's directives. An action is defined as "projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more agencies" (ECL 8-0105, subd 4, par [i]). By regulation, "actions" also encompass "planning activities of an agency that commit the agency to a definite course of future decisions" (6 NYCRR 617.2 [b] [2]). All of the activities or steps in a capital project (i.e., planning, design, contracting, construction and operation) constitute an action, but only one draft and one final environmental statement are necessary if the statement "address[es] each step at a level of detail sufficient for an adequate analysis of environmental effects" (6 NYCRR 617.2 [b]).

While the imprecision of the statutory language renders it difficult to identify the precise point when a DEIS must be prepared during an "action" (see *Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41, 45), the legislative intent is that environmental factors be given consideration "[a]s early as possible in the formulation of a proposal for an action" (ECL 8-0109, subd 4; see, also, 6 NYCRR 617.1 [c]). The emphasis on early consideration facilitates the underlying purposes of a DEIS — "to relate environmental considerations to the inception of the planning process, to inform the public and other public agencies as early as possible about proposed actions that may significantly affect the quality of the environment" (ECL 8-0109, subd 4). This is consistent with the requirement that the SEQRA process "run concurrently with other procedures relating to the review and approval of the action" (ECL 8-0109, subd 5). If the DEIS is not prepared at an early stage, modification of a project in light of subsequently discovered environmental problems may become difficult because nonenvironmental considerations may have already been transformed into an over-all proposal (see Orloff, SEQRA: New York's Reformation of NEPA, 46 Albany L Rev 1128, 1136). Not only will the sponsors of projects be more likely to resist alteration of proposals which already have received some processing and approval, but institutional bias may result because later governmental decisions may be influenced by prior governmental decisions or commitments (see *Matter of Tri-County Taxpayers Assn. v Town*

*Bd., supra;* Note, Program Environmental Impact Statements: Review and Remedies, 75 Mich L Rev 107, 111-112; 4 Rohan, Zoning and Land Use Controls, § 27.02[2]). Indeed, in *Tri-County* (*supra,* pp 46-47), the Court of Appeals declared that: "[T]he dynamics and freedom of decision-making with respect to a proposal to rescind a prior action are significantly more constrained than when the action is first under consideration for adoption. Thus, although not legally conclusive the initiatory action by the town board might well have been practically determinative. In effect the purpose of SEQRA is to assure the preparation and availability of an environmental impact statement at the time any significant authorization is granted for a specific proposal".

It is thus apparent that the DEIS must be prepared at a point " 'where genuine flexibility remains before bureaucratic momentum strips [it] of any real influence on decision-making' " (see *Mount Sutro Defense Comm. v Regents of Univ. of Cal.,* 77 Cal App 3d 20, 34).

With these considerations in mind, we return to the parties' debate as to when it is during the subdivision approval process that the DEIS must be filed. We view preliminary plat approval as so significant a determination during the process that an environmental impact statement must be deemed a prerequisite to the approval. The two-stage subdivision approval procedure — preliminary approval and final approval — adopted in this State in 1966 (Town Law, § 276, subds 3, 4, as amd by L 1966, ch 695) was intended to fix the broad outlines of the proposed development so that the developer could know where it stood before incurring additional expenses associated with the preparation of the detailed plans involved in final approval (see *Matter of Mahopac Isle v Agar,* 39 Misc 2d 1, 5; Krasnowiecki, Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control, 114 U Pa L Rev 47, 87; Note, Land Subdivision Control, 65 Harv L Rev 1226). Preliminary approval involves decisions concerning significant design features such as street location and layout, topography, minimum lot size, public improvements and the amount of open space needed for public recreation. The planning board may accept the

preliminary plat as submitted, modify it or reject it (see 4 Rathkopf, The Law of Zoning and Planning [4th ed], ch 71, § 5; Note, Platting, Planning & Protection — A Summary of Subdivision Statutes, 36 NYU L Rev 1205, 1210; Reps, Control of Land Subdivision by Municipal Planning Boards, 40 Cornell L Q 258; Cunningham, Land-Use Control — The State and Local Programs, 50 Iowa L Rev 367). Once preliminary approval has been granted, the final plat implements the design determinations made at the earlier stage and shows the project in greater detail.

Preliminary plat approval has greater weight than a mere informal reaction to a preliminary plat (see 4 Anderson, American Law of Zoning [2d ed], § 23.13) and it has been held that a planning board may not modify a preliminary plat and then disapprove of the layout of a final plat that conforms to the modifications prescribed by the board (see, e.g., *Matter of Walton v Town of Brookhaven,* 41 Misc 2d 798; *Matter of Villa-Laken Corp. v Planning Bd.,* 138 NYS2d 362; *Great Western Sav. & Loan Assn. v City of Los Angeles,* 31 Cal App 2d 403; *Lakeshore Dev. Corp. v Plan Comm.,* 12 Wis 2d 560; see, also, 4 Anderson, American Law of Zoning [2d ed], § 23.13; 4 Rathkopf, The Law of Zoning and Planning [4th ed], ch 71, § 5). It has even been held that, absent new information, a subsequent modification or rejection of a preliminarily approved subdivision layout is an arbitrary and capricious act subject to invalidation (see *Matter of Walton v Town of Brookhaven, supra; Matter of Villa-Laken Corp. v Planning Bd., supra;* cf. *Matter of Connecticut Riv. Estates v Luchsinger,* 52 Misc 2d 620). Preliminary plat procedures and default provisions would lack significance if they were subject to nullification as the result of mere change of heart by the planning body.

In determining the temporal position of the DEIS in the subdivision process, the holdings of our sister States are entitled to respect in view of the essential uniformity of environmental legislation (see Robinson, SEQRA's Siblings: Precedents from Little NEPA's in the Sister States, 46 Albany L Rev 1155, 1157). Interpreting Washington's State Environmental Policy Act of 1971 (Wash Rev Code Ann, ch 43.21C; SEPA), a statute similar to our own, the Supreme Court of Washington held that preliminary approval of a subdivision requires the preparation of an

environmental impact statement (see *Loveless v Yantis,* 82 Wn 2d 754). The court reasoned that preliminary approval of a plat is a discretionary, nonduplicative decision and preparation of a statement at the time of preliminary approval would facilitate early and meaningful environmental review of the project because that is the stage when the planning body, the developer and the public should be made aware of the environmental consequences of the design matters revealed in the preliminary plat and investment costs would be minimized if the plat were to be abandoned or altered (*Loveless v Yantis, supra,* pp 765-766).

Our conclusion, then, is that when the planning agency has determined that development of the subdivision might significantly affect the environment, the application for preliminary approval is not complete until a DEIS has been filed and has been accepted by the agency as satisfactory in scope and content (see ECL 8-0109, subd 5; 6 NYCRR 617.3 [e]). The DEIS should be available when it is still practicable to modify the project so as to mitigate potentially adverse economic effects or to choose a less environmentally damaging alternative (see ECL 8-0109, subds 2, 8) and before it is too late to influence the basic design of a project already fixed at the preliminary stage (see ECL 8-0103, subd 7; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, *supra; Matter of Town of Henrietta v Department of Environmental Conservation,* 76 AD2d 215).

Once the application is complete, the planning board must co-ordinate its subdivision approval procedures with SEQRA (ECL 8-0109, subd 5; 8-0103, subd 6). The 30-day period of comment on the DEIS for involved agencies and the public (6 NYCRR 617.8 [c]) easily fits within the 45-day period for holding a preliminary plat hearing under subdivision 3 of section 276 of the Town Law and it is preferable that a joint hearing be held (6 NYCRR 617.8 [d]). The final environmental impact statement need not be prepared until after the final plat has been submitted since SEQRA requires only one DEIS and one final environmental impact statement to be prepared for a given action (6 NYCRR 617.2 [b]); preparation of a final environmental

impact statement need only precede the agency's final decision to approve an action (6 NYCRR 617.9 [c]). Depending on whether significant new information is revealed in the final plat submission, the agency may require the filing of a supplemental DEIS (see *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 494-495, *supra*).

Where a DEIS is a requisite to preliminary approval, the 45-day deadline imposed by the Town Law seems too short for planning boards to fulfill their SEQRA requirements. While an agency may vary SEQRA's time limits for "preparation, review and public hearings to coordinate the environmental review process with other procedures relating to review and approval of an action" (ECL 8-0109, subd 5), provided the periods as varied are "no less protective of environmental values" (6 NYCRR 617.4 [b]), the agency cannot take any further steps until the submission of a DEIS (see ECL 8-0109, subd 4). If the application does not contain the DEIS, the 45-day period for Town Law action may elapse before the statement has been filed, leaving the agency with the option of granting approval without the DEIS and running the risk of legal challenge to its decision or of denying approval on the ground of inadequate environmental review (Sahm, Project Approval Under the California Environmental Quality Act: It Always Takes Longer Than You Think, 19 Santa Clara L Rev 579). Neither alternative is acceptable.

It is apparent that SEQRA's drafters did not take into account some of the idiosyncracies of subdivision procedures (see Marsh, Commentary — Unresolved Issues, 46 Albany L Rev 1298, 1304) and it has been left to the judiciary to attempt to co-ordinate the statutes. Resolution of the instant case depends on which statute has pre-eminence — the 45-day requirement enacted in 1966 to limit the depredations of dilatory planning boards (see *Matter of Mahopac Isle v Agar,* 39 Misc 2d 1, *supra;* 1 Anderson, NY Zoning Law and Practice [2d ed], § 15.07) or SEQRA enacted in 1975 to save the environment and preserve it for future generations (ECL 8-0101, 8-0103, subds 1, 8). We have no difficulty in according priority to SEQRA because the legislative declaration of purpose in

that statute makes it obvious that protection of "the environment for the use and enjoyment of this and all future generations" (ECL 8-0103, subd 8) far overshadows the rights of developers to obtain prompt action on their proposals. Once SEQRA's priority is recognized, the statute must be read to mandate that a preliminary plat application is not complete until a DEIS has either been dispensed with or accepted and the 45-day limitation in the Town Law does not commence to run until the application is complete (see *Asarco Inc. v Air Quality Coalition,* 92 Wn 2d 685, 710). Here, the East Hampton Planning Board conducted a hearing on the preliminary plat within 45 days of its acceptance of the DEIS and therefore it acted in a timely manner without default under subdivision 3 of section 276 of the Town Law.

In reaching our conclusion, we are quite aware that SEQRA and its regulations have set no time limits within which a planning board must accept a proposed DEIS (see *Matter of East Clinton Developers v Town of Clinton,* 88 AD2d 416). The danger, of course, is that planning boards may utilize the absence of SEQRA time limitations to resume the type of bureaucratic delay that resulted in the enactment of the 45-day time limitation in 1966. If such consequences are to be avoided, the Legislature and the Commissioner of Environmental Conservation should turn their attention to the problem.

Whatever the future may hold in this respect, however, the instant judgment should be reversed, without costs or disbursements, and proceeding dismissed.

DAMIANI, J. P., THOMPSON and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated March 14, 1983, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.