*649 OPINION OF THE COURT
Stanley Harwood, J.
The petition for judgment pursuant to CPLR article 78 is granted to the extent that respondent Superintendent of the Division of Building is directed to issue to petitioner a permit authorizing it to dismantle "Jackson House” for removal, reassembly and refurbishing for use as a museum, library and resource center on petitioner’s Locust Valley campus. Petitioner’s subsequently made but simultaneously submitted motion for leave to conduct depositions of, among others, members of respondent Landmarks Preservation Commission (the commission) is denied as moot.
Petitioner, a not-for-profit educational institution founded by the Quakers in 1876, is the owner of premises located in the Jericho area of the Town of Oyster Bay. The premises, which include a 21A-story house build in the 1870’s, were bequeathed to petitioner by Miriam Jackson, one of its alumnae. In 1983, over petitioner’s objection, the premises were designated a landmark site pursuant to chapter 23 of the Code of Ordinance, Town of Oyster Bay (the Code). On November 18, 1985, petitioner made application for a permit authorizing it to dismantle and move the house from its current location, fronting on a heavily traveled road and adjacent to a shopping center and gasoline station, for reassembly and refurbishing in the Quaker style on its more rural campus, apparently located outside the jurisdiction of the commission. Although petitioner asserts various grounds to support its prayers for relief, the dispositive issue is whether respondent commission’s failure either to approve or disapprove petitioner’s application within 60 days of its receipt mandates issuance of the permit. It does.
Code § 23-11 (A) prohibits, inter alia, the alteration, repair, moving or demolition of any structure or site designated as a landmark, except in accordance with the provisions of chapter 23. Section 23-11 (B) requires that the commission review all plans for moving, exterior construction, alteration or repair, landscaping or demolition, of places, sites or structures designated as landmarks, "before a building permit for the proposed activity is granted by the division of building”. (Code § 23-11 [B] [1].) In reviewing the plans, the commission is required to give consideration to the historical and architectural value of the building and its relationship to the historic and architechtural value of the surrounding area, the general *650 appropriateness of proposed exterior designs, colors arrangement, texture and materials, and any other factors relating to aesthetic considerations which the commission deems pertinent. (Code § 23-11 [B] [3].) Code § 23-11 (F) (5) provides that: ”[t]he landmarks preservation commission shall approve, modify and approve, or disapprove such plans within sixty (60) days after receiving the application and said plans, and shall transmit a record of its proceedings and findings to the superintendent of the division of building and the applicant. If the commission fails to act within sixty (60) days of receipt of the application, the application shall be deemed to have been approved.” (Emphasis added.)
Section 23-11 (F) (6) provides: "The superintendent of the division of building shall not grant a building permit until such time that an application has been approved by the landmarks preservation commission or sixty (60) days have elapsed from the date the application is received by the commission. ” (Emphasis added.)
Petitioner’s two-page application for a permit authorizing it to dismantle and move the house was transmitted to the commission on the same day it was filed with the Division of Building. (Code § 23-11 [F] [1].) The application was not accompanied by any formal "plans”, although in the space provided in the application to "describe in detail what work is to be done”, petitioner generally describes its intentions regarding the house, and it notes that the present location of the house fails to provide any significant historical context. Petitioner also notes that information as to the actual moving of the building will be provided upon approval of the application by the commission. On page 2 of the application, a plot diagram is provided. (Cf. id.)
Although specific provision is made for public hearings on any application for designation of a landmark (see, Code § 23-7 [d], [e]) and although the commission "may confer with the applicant” (Code § 23-11 [F] [3]) concerning alteration, repair, demolition, or moving of a landmark or landmark site, there is no requirement in chapter 23 of the Code that a public hearing be held on applications such as petitioner’s. The commission nonetheless advised petitioner that a hearing would be conducted on December 11, 1985, some 23 days after receipt of the application. However, petitioner was subsequently advised that, at the request of a civic association, the hearing would be adjourned until mid or late January 1986; January 22, 1986 was ultimately selected.
*651 On January 21, 1986, the 64th day after receipt by the commission of petitioner’s application, petitioner demanded that the Superintendent of the Division of Building issue the permit. This proceeding, obviously already contemplated, was commenced at 4:00 p.m. on January 21, 1986, following verbal indications that no permit would be forthcoming. By letter dated January 20, 1986, postmarked January 21, 1986 and received by petitioner on the afternoon of January 22, 1986, the Commissioner of Planning advised that the commission "is expecting to receive plans on the night of the hearing, along with an appropriate presentation detailing the manner in which the landmark structure will be relocated” and that "[failure to submit plans the night of the Hearing, will necessitate an adjournment of the Hearing to a later date”. Petitioner appeared before the commission on January 22, 1986 ready to proceed with the testimony of its experts, and took the position that, because of the nature of the permit sought, no written plans were required. The chairman ruled that an oral presentation would "not suffice” (but see, Code § 23-11 [F] [3]) and, over petitioner’s objection, adjourned the hearing stating that "[w]hen you have plans showing exactly how you intend to dismantle one of our Town landmarks, we will be happy to hear this entire case again”.
Default statutes similar to Code § 23-11 (F) (5) have been uniformly construed to require automatic approval upon failure to act within the prescribed time limit (see, Matter of Sun Beach Real Estate Dev. Corp. v Anderson, 98 AD2d 367, affd 62 NY2d 965), and respondents articulate no reason which would warrant a different construction for the ordinance which, they assert, governs the issuance of the permit sought here. Even if, as respondents here claim, the application as filed on November 18, 1985 was incomplete or inadequate, the commission was nonetheless obligated "to act” within the meaning of Code § 23-F (5) (see, e.g., Wallberg v Planning Bd. of Town of Pound Ridge, 115 AD2d 539) no later than January 17, 1986. Its failure to do so constitutes automatic approval of petitioner’s application for a permit. (Supra; Code § 23-F [5].) Moreover, the application as submitted presents enough detail for the commission to act on what could in this instance be its only legitimate concern — complete removal of a house to a location within another municipality. The belated insistence on written plans the commission has little or no jurisdiction to review (cf. Code § 23-11 [B]) accomplishes nothing but the administrative delay the ordinance was apparently *652 meant to avoid. (See, Matter of Castle Estates v Hubbard, 52 Misc 2d 774.)
Respondents’ affirmative defense that petitioner is obligated to appeal "the denial” of issuance of the building permit automatically deemed approved (Code § 23-F [5]) to the Zoning Board of Appeals before commencement of this proceeding is without merit. (Cf. Town Law §§ 267, 64 [17-a]; see, Matter of Cassety v Dobson, 255 App Div 928, rearg denied 256 App Div 895.) And inasmuch as no other ground is advanced by respondents which precludes issuance of the permit, the superintendent shall issue the permit sought and deemed approved by virtue of section 23-11 (F) (5) (see also, Code § 23-11 [F] [6]). However, petitioner’s prayer for judgment permanently enjoining respondents from "interfering” with the moving of the building is denied. It does not appear that in the context of this article 78 proceeding, such relief is either necessary or appropriate. (Cf. CPLR 7805.) Moreover, the parties do not address the extent, if any, to which the town through one of its agencies has jurisdiction over petitioner’s activities on the premises within the town’s borders once the mandated permit issues.