In the Matter of LINDA E. MARSHALL et al., Appellants, v CITY OF ALBANY et al., Respondents. [845 NYS2d 855]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (McCarthy, J.), entered April 18, 2006 in Albany County, which, among other things, dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, declare null and void several option agreements for the purchase of certain real property.

This appeal involves, among other issues, an alleged violation of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) and failure to follow a prior decision of this Court by respondent City of Albany, which is one of many municipalities in the Albany New York Solid Waste Energy Recovery System Waste Shed Planning Unit (*see generally* ECL 27-0107). That Planning Unit was created in 1989 to develop a solid waste management plan for the region. The underlying facts are set forth in appeals from earlier proceedings that were commenced once the 363-acre site in the Town of Coeymans, Albany County, known as Site C-2, was indicated as the preferred site (*see Matter of Town of Coeymans v City of Albany*, 284 AD2d 830 [2001], *lv denied* 97 NY2d 602 [2001] [hereinafter *Coeymans II*]; *Matter of Town of Coeymans v City of Albany*, 237 AD2d 856 [1997], *lv denied* 90 NY2d 803 [1997]). The Department of Environmental Conservation, Region 4 (hereinafter DEC), was designated the lead agency. The City negotiated options to purchase the parcels that comprised Site C-2 and, thereafter, its effort to segment review for acquiring the property was nullified (*see Matter of Town of Coeymans v City of Albany*, 284 AD2d at 835).

Because of delays encountered in attempting to establish a new solid waste site, the City was permitted by DEC to expand its existing facility (known as P-4 expansion) subject to various conditions including a continuation of its efforts to establish a new site. In light of this condition and the approaching expiration of the option agreements for Site C-2, the City entered into a series of two-year extension agreements with the owners. Those agreements included a third option (January 2001 to December 2002), a fourth option (January 2003 to December 2004) and a fifth option (January 2005 to December 2006). By the time of the fifth option agreement, the City had paid over $5 million for the options, which was an amount that exceeded the original purchase price and, under the terms of the agreement, the City was entitled to have the property transferred to it.

Petitioners commenced this proceeding in April 2005 asserting, among other things, that the third, fourth and fifth extensions of the option agreements violated SEQRA. In a preanswer motion, Supreme Court (Tomlinson, J.) dismissed six of the seven causes of action, including challenges to the third and fourth options upon the ground that claims regarding those options were barred by the statute of limitations. Thereafter, Supreme Court (McCarthy, J.) dismissed the remaining cause of action in April 2006 finding that the fifth option and extension

agreement did not violate SEQRA. In September 2006, the City and landowner respondents closed on the property. Petitioners subsequently perfected this appeal in April 2007.

We find merit in the City's argument that the inordinate delay by petitioners in bringing this proceeding, in which they seek equitable relief, implicates the doctrine of laches. "Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity" (*Matter of Schulz v State of New York*, 81 NY2d 336, 348 [1993] [internal quotation marks and citation omitted]; *accord Matter of Barabash*, 31 NY2d 76, 81 [1972]; *see Matter of E.F.S. Ventures Corp. v Foster*, 71 NY2d 359, 371-372 [1988]). Here, petitioners did not directly challenge the initial option agreements in the earlier action. Nor was any challenge presented when the third and fourth options were executed. Each option covered a period of two years, certainly enough time to commence a proceeding. Indeed, as held by Supreme Court (Tomlinson, J.), the attempt by petitioners in the current proceeding to reach back to the third and fourth options was clearly untimely. Even though this proceeding is not barred by the statute of limitations as to the fifth option, the delay in waiting until after that last option was in place before bringing this proceeding is troubling. Further, once the proceeding was commenced, petitioners failed to make a timely motion for a preliminary injunction to attempt to prevent the transfer of the property. In light of the repeated failure to act promptly and the considerable prejudice to and expense incurred by the City, we find laches an appropriate defense.

We further note that, were we to address the merits, we would affirm for essentially the same reasons set forth in the thorough decision of Supreme Court (McCarthy, J.). In light of the environmental concerns implicated, two issues merit brief mention. First, while we held in *Coeymans II* that the City's Common Council could not unilaterally segment the acquisition and funding of Site C-2 and declare itself the lead agency for such purpose where DEC was the lead agency for the entire project (*see Matter of Town of Coeymans v City of Albany*, 284 AD2d at 834-835), we were not asked to address the validation of the City's options. Extending the options was apparently necessary in order for the City to receive permission from DEC to continue operating the current facility that is located within its boundaries (the P-4 expansion). Moreover, since the City did not have eminent domain power where Site C-2 is located (*see* General City Law § 20) and the municipality in which Site C-2 is located

is opposed to a facility there, the extensions of the options were ostensibly necessary to keep Site C-2 as a possible site.*

Next, under the narrow circumstances presented, the use of options and extensions for the property—when considered together with the long delays that eventually resulted in the City obtaining deeds under the terms of those agreements— were not actions that set a definite course (*see* 6 NYCRR 617.2 [b] [2]; *cf. Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury*, 55 NY2d 41, 46 [1982]; *Matter of Sun Beach Real Estate Dev. Corp. v Anderson*, 98 AD2d 367, 371 [1983], *affd* 62 NY2d 965 [1984]). In such regard, it is significant that neither the City nor any member of the Planning Unit is the lead agency. DEC has that responsibility and it is not a sponsor of the proposed solid waste management plan. DEC is, in essence, neutral, while having a strong regulatory interest regarding both the solid waste plan and the potentially implicated wet lands (*see generally* Gerrard, Ruzow and Weinberg, Environmental Impact Review in New York § 3.03 [1]). The record reveals that environmental issues have been considered throughout. There is no reason to believe that DEC will require less than continued full environmental review without ascribing any weight to the unusual circumstances regarding Site C-2 that have transpired up to this point in this lengthy process. As aptly observed by Supreme Court (McCarthy, J.), the fate of Site C-2 rests with DEC and not the City, the City will be bound by DEC's determinations, and there is not a significant risk that DEC will abrogate its responsibilities.

Crew III, J.P., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* While public authorities created to manage solid waste typically are clothed with eminent domain power (*see e.g.* Public Authorities Law § 2041-d [4]; former § 2048-e [3]; § 2051-e [4]; § 2729 [4]), no such power was provided to the Planning Unit. The City's power to exercise such power outside its boundaries is limited to specifically enumerated situations and does not include establishment of a solid waste facility (*see* General City Law § 20 [2]).